UNITED STATES of America

v.

**Carl O. JORDAN, Appellant.**

No. 90–3286.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 21, 1991.

Decided Dec. 13, 1991.

As Amended Dec. 13, 1991.

---

Michael H. Stone, for appellant. Byron Anderson (appointed by the Court) was on the brief, for appellant.

Thomas J. Tourish, III, Asst. U.S. Atty., Dept. of Justice, for appellee. Jay B. Ste-phens, U.S. Atty., John R. Fisher, Thomas C. Black, Clendon Lee and William C. Sny-der, Asst. U.S. Attys., Dept. of Justice, were on the brief, for appellee.

Before MIKVA, Chief Judge, WALD and BUCKLEY, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

Carl O. Jordan appeals his conviction for possession of cocaine with intent to distrib-ute, and possession of marijuana, on the grounds that the district court erroneously failed to suppress evidence that was ob-tained in violation of the fourth amend-ment. Because we cannot adjudicate Jor-dan's fourth amendment claims on the record before us, we remand the record to the district court for clarification of the factual findings upon which it based its legal conclusion that no seizure occurred. *See United States v. Talkington*, 843 F.2d 1041 (7th Cir.1988); *United States v. Williams*, 754 F.2d 1001 (D.C.Cir.1985); *United States v. Moore*, 529 F.2d 355 (D.C.Cir.1976). Upon remand, the district court should review the existing record of the suppression hearing and make specific findings concerning whether the police offi-cers had taken and retained Jordan's driv-er's license at the time he consented to the search of his bag.

## I. BACKGROUND

According to facts found by the trial judge or testified to, without contradiction, in the early evening of April 14, 1990, four plainclothes Metropolitan Police Depart-ment detectives were on drug interdiction detail at the Greyhound/Trailways bus de-pot. Two officers, Lawrence Coates and James McNamara, observed the defendant Carl Jordan disembark from a bus that originated in New York City. Jordan walked quickly through the station, and carried only a tote bag. The officers fol-lowed him through the terminal on his way to the public parking lot. At the exit doors, Jordan was met by a man who ap-

peared to be waiting for him. The two men then proceeded out to the parking lot where they walked over to a row of parked cars. As Jordan and his companion prepared to get into one of the cars on the driver's side, Officer Coates approached Jordan. *See* Suppression Hearing Transcript ("Tr.") at 7, 19–20. Officer McNamara meanwhile had circled around behind the car, and stood about fifteen feet behind Jordan while Coates questioned him. Tr. at 9, 45.

Coates, speaking in conversational tones, identified himself as a narcotics officer, displayed his police identification folder, and asked Jordan if he was willing to talk. Jordan said "yes." Coates then told Jordan about his purpose of stopping the flow of drugs into the city, and asked to see Jordan's bus ticket and driver's license. Tr. at 22, 27–28. Jordan testified that he gave Coates his bus ticket and his New York driver's license. Tr. 57. Coates then asked Jordan if he was carrying any drugs. Jordan replied that he was not. Coates asked Jordan if he could search the tote bag. Jordan complied with this request, placing the bag on the hood of the car. The ensuing search, joined by Officer McNamara, uncovered more than 50 grams of cocaine base and a small amount of marijuana.

After his arrest, Jordan moved for suppression of the narcotics discovered in his tote bag. After a suppression hearing, the district court issued an opinion denying Jordan's motion on the grounds that Jordan had not been seized within the meaning of the fourth amendment, and that Jordan "voluntarily gave his consent" to the search of his tote bag.

In rejecting the motion to suppress, the trial court stated: "the Court finds that none of what Coates and McNamara said they did would have caused a reasonable person, one not guilty of any crime, to conclude he could not walk away." *See United States v. Jordan*, Crim. No. 90–00212, Memorandum and Order (D.D.C. July 16, 1990) ("Mem. and Order") at 10. Ultimately, the district court ruled, "[u]pon these facts, the Court makes the following conclusions of law.... [N]othing the police officers did constituted an arrest, detention, or seizure. This follows from a finding that a reasonable person would have felt free to break off the interview and leave.... Not having unlawfully detained or arrested Jordan, the police did not taint Jordan's consent." *Id.* at 10–11.

Primarily on the basis of the drugs seized and subsequently admitted into evidence at trial, the jury found Jordan guilty of possession with intent to distribute in excess of 50 grams of cocaine, pursuant to 21 U.S.C. §§ 841(a) and 841(b)(1)(A)(iii), and possession of marijuana, pursuant to 21 U.S.C. § 844(a).

## II. ANALYSIS

Jordan argues on appeal that his encounter with the police violated the fourth amendment's stricture against unreasonable searches and seizures,[1] that it amounted to a seizure without legal justification, and thus required that evidence obtained from it be suppressed. The government does not argue that prior to the discovery of the drugs Coates and McNamara possessed the requisite reasonable "articulable suspicion" to justify an "investigatory

---

1. We reject the government's contention at oral argument that Jordan waived objection to the evidence discovered from the search on the grounds that an illegal seizure had taken place. Rule 12(b) of the Federal Rules of Criminal Procedure allows pretrial motions to be made orally or in writing, "at the discretion of the trial judge." The seizure question was raised during the suppression hearing before the district judge, over the express objections of government counsel. Any conceivable doubt about whether the question had been raised (and thus properly preserved) was put to rest by the district court's explicit analysis and conclu-

sion of law that no seizure occurred. Moreover, in *United States v. Daniels*, 770 F.2d 1111, 1114 (D.C.Cir.1985), this court ruled that "'a pretrial motion need not state explicitly the grounds upon which a motion is made'; all that is necessary is that the motion 'contain facts and arguments that make clear the basis of defendant's objections'" (quoting *United States v. Bailey*, 675 F.2d 1292, 1294 (D.C.Cir.), *cert. denied*, 459 U.S. 853, 103 S.Ct. 119, 74 L.Ed.2d 104 (1982)). Without question Jordan raised the facts and arguments necessary to make an illegal seizure claim.

stop," *see United States v. Sokolow,* 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989); *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), let alone probable cause for an arrest. Indeed, in his testimony during the suppression hearing, Coates candidly expressed "for the record" that without Jordan's consent the police had no basis to conduct the search. Tr. 35–36. The critical question then becomes whether a seizure in fact occurred, despite the lack of any justification. We examine the district court's legal conclusion that no such seizure occurred under a *de novo* standard of review. *See, e.g., Florida v. Bostick,* —— U.S. ——, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); *United States v. Maragh,* 894 F.2d 415 (D.C.Cir.1990).

The protection against "unreasonable ... seizures" extends to seizures of the person, as well as seizures of property. *See Henry v. United States,* 361 U.S. 98, 100, 80 S.Ct. 168, 169–70, 4 L.Ed.2d 134 (1959). Such seizures of the person are defined as restraints of liberty caused either by physical force or a "show of authority" on the part of law enforcement officers. *Terry,* 392 U.S. at 19 n. 16, 88 S.Ct. at 1879 n. 16. No physical force is involved here, so the encounter can only be characterized as a seizure if it involves a "show of authority" sufficient to meet the standards established by the Supreme Court.

In *United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), Justice Stewart enunciated the test for a "show of authority" seizure: "A person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Id.* at 554, 100 S.Ct. at 1877 (opinion of Stewart, J.); *accord Michigan v. Chesternut,* 486 U.S. 567, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988); *Florida v. Royer,* 460 U.S. 491, 502, 103 S.Ct. 1319, 1326–27, 75 L.Ed.2d 229 (1983) (plurality opinion).

The Supreme Court last Term revisited this intriguing question of what constitutes a seizure of the person by a "show of authority." *See Bostick,* 111 S.Ct. at 2382;

*California v. Hodari D.,* —— U.S. ——, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). Further explicating (and arguably narrowing) the *Mendenhall* formula, the Court stated that "in order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether *police conduct* would have communicated to a reasonable person that the person was not free to decline the officer's request or otherwise terminate the encounter." *Bostick,* 111 S.Ct. at 2389 (emphasis added). The Court held in *Bostick* that if the restraint on a person's liberty was caused by a "factor independent of the police conduct" (such as the cramped confines of a crowded bus, or by the bus's imminent departure), that factor is not taken into account under fourth amendment seizure analysis. *Id.* at 2387; *see also INS v. Delgado,* 466 U.S. 210, 218, 104 S.Ct. 1758, 1763–64, 80 L.Ed.2d 247 (1984) (no seizure because restrictions on employee's freedom of movement in the workplace were not caused by police conduct).

In *Hodari D.,* the Court emphasized that the *Mendenhall–Bostick* test is an objective one: It looks to "not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person." *Hodari D.,* 111 S.Ct. at 1551. In *Hodari D.,* the Supreme Court also added another element to the seizure analysis. It held that "the so-called *Mendenhall* test" was itself only a threshold requirement, and to effect a seizure the person must actually have submitted to the "show of authority." *Id.* at 1551–52; in short not only must the encounter meet an objective test of coercion but a subjective one of subjection. In sum, under the most recent cases a seizure occurs only if: (1) a reasonable person would feel, under all the circumstances, he could not disregard the police inquiries and go about his business; (2) the restraints imposed upon him result from the police conduct itself rather than the happenstance of where the encounter occurred; and (3) the person actually reacted in a manner consistent with being "seized."

 The initial "objective" test for a seizure, *i.e.*, whether a reasonable person could have believed himself to be under restraint, looks to the "totality of the circumstances." *Chesternut*, 486 U.S. at 567, 108 S.Ct. at 1975 (quoting *Mendenhall*, 446 U.S. at 554, 100 S.Ct. at 1877 (opinion of Stewart, J.)). Overt shows of force, such as display of weapons and physical intimidation or threats, are not involved here. Officer Coates identified himself as a narcotics investigator and described his mission; he questioned Jordan about his knowledge or possession of drugs, and he asked to see Jordan's identification. While a police request for identification does not automatically give rise to a seizure, we have stated on previous occasions that "once the identification is handed over to police and they have had a reasonable opportunity to review it, if the identification is not returned to the detainee [it is] difficult to imagine that any reasonable person would feel free to leave without it." *United States v. Battista*, 876 F.2d 201, 205 (D.C.Cir.1989); *cf. Royer*, 460 U.S. at 501, 103 S.Ct. at 1326 (plurality opinion) (noting that a seizure occurred when, among other things, police "retain[ed the defendant's] ticket and driver's license ... without indicating in any way that he was free to depart").

Similarly, in *United States v. Waksal*, 709 F.2d 653 (11th Cir.1983), a case in which police officers failed to return a detainee's ticket and license during the course of questioning, the court described that fact as "highly material in analyzing" whether police conduct amounted to a seizure. The court concluded, "we fail to see how appellant could have felt free to walk away from police officers when they still possessed the documents necessary for him to continue his journey." *See also United States v. Cordell*, 723 F.2d 1283, 1285 (7th Cir.1983), *cert. denied*, 465 U.S. 1029, 104 S.Ct. 1291, 79 L.Ed.2d 693 (1984) (seizure occurred when policeman handed defendant's license and ticket to another policeman and continued questioning). In *United States v. Thompson*, 712 F.2d 1356 (11th Cir.1983), the court analyzed an encounter where, acting without articulable suspicion, a policeman approached a person sitting in his car at an airport parking lot, asked him for identification, and then, without returning the driver's license, proceeded to ask and obtain consent for a search. The court ruled:

> When the [officer] retained [defendant's] license, the encounter matured into an investigative stop protected by the Fourth Amendment. Without his driver's license [defendant] was effectively immobilized. A reasonable person in these circumstances would not have believed himself free to leave. If [he] had tried to drive away he could have been arrested for driving without a license.

*Id.* at 1359.

The government cites *United States v. Savage*, 889 F.2d 1113 (D.C.Cir.1989), to buttress its argument that even if Jordan's license had been retained, no seizure occurred here. That case involved questioning a passenger on board a train during a short afternoon stopover at Union Station. The court reasoned that (as the Supreme Court pointed out in *Bostick*, 111 S.Ct. at 2387), a passenger would not feel free to leave the train under such circumstances even if the police had not been present. Whether Savage's ticket had been returned to him was thus inconsequential because he had nowhere to go anyway, so the restraint he felt was not due to police interaction.

In this case, in contrast, if Jordan's license had been retained during the interview, it may present a more compelling instance of a reasonable person being unable "to disregard the police and go about his business," *see Hodari D.*, 111 S.Ct. at 1551; if the police were holding Jordan's license it is difficult to imagine how he could pursue his "business" and get into the car and drive off.[2] The government, in fact, does not truly contest this point: At oral argument when asked about the im-

---

**2.** The *Savage* court recognized that "failing to return a traveler's ticket after sufficient time to peruse it had elapsed" may "be tantamount to a detention," if it prevented the traveler "from going about his 'ordinary business.'" 889 F.2d at 1117 n. 3.

Other cases relied upon by the government are similarly inapposite: *Bostick*, 111 S.Ct. at

portance of the license withholding, government counsel conceded, with admirable candor, that "the failure to return documents such as this are [sic] a substantial factor in determining whether there is a seizure or detention."[3]

■ On the record before us we are unable to determine on what factual basis the district court ruled that "nothing the police officers did constituted a ... seizure." Both Officer Coates and Jordan testified that Coates asked to see Jordan's ticket and identification. Jordan testified that he complied with the officer's request and gave Coates his driver's license and bus ticket. Jordan also testified that Coates never returned the documents. Coates was asked three times about the documents, but he could not remember whether he saw or retained them. The other arresting officer, Detective McNamara, also could not remember what if anything happened with Jordan's papers during the interview. The district court did not make clear its factual findings on this highly material fact.

Because we cannot determine from this record what if anything happened to Jordan's driver's license, a key factor in determining whether a "seizure" occurred, we remand the record for clarification of the district court's finding on this factual question. Specifically, the district court should review the suppression hearing record and determine whether Jordan turned over his driver's license to Officer Coates at the time Coates asked to see his identification, and, if so, whether Coates retained Jordan's driver's license at the time he asked to search Jordan's bag.

### III. CONCLUSION

Following the determination by the district court, the record will be returned to this panel for final decision of this appeal.

*So ordered.*

---

2385 ("officers ... asked to inspect [defendant's] ticket and identification ... both were immediately returned to him"); *United States v. Samuels,* 938 F.2d 210 (D.C.Cir.1991) (defendant's papers were taken and examined but quickly returned); *United States v. Lewis,* 921 F.2d 1294 (D.C.Cir.1990) (same); *United States v. Baskin,* 886 F.2d 383 (D.C.Cir.), *cert. denied,* 494 U.S. 1089, 110 S.Ct. 1831, 108 L.Ed.2d 960 (1989) (same).

**3.** A determination of the seizure issue based upon a specific finding of whether Jordan's license had been retained is vital to the question of admissibility of the evidence secured as a result of the search, since the district court itself based its finding of voluntariness as to the search on its conclusion that no seizure had occurred. Mem. and Order at 11. Evidence secured as the result of an illegal search or seizure is generally tainted "fruit of a poisonous tree," and not admissible at trial. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). If the search of Jordan's tote bag took place during an illegal seizure of his person, evidence discovered as a result of the search would be excluded unless an intervening event or attenuating circumstance purged the taint of the illegal seizure. *See Taylor v. Alabama,* 457 U.S. 687, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982); *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *United States v. Timberlake,* 896 F.2d 592 (D.C.Cir.1990); *United States v. Cherry,* 759 F.2d 1196 (5th Cir.), *cert. denied,* 479 U.S. 1056, 107 S.Ct. 932, 93 L.Ed.2d 983 (1985); *Thompson,* 712 F.2d at 1361–62. While it is of course possible that a "voluntary" confession or consent to a search may under such circumstances be purged of the taint of an illegal arrest or detention, *see, e.g., Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *Wong Sun,* 371 U.S. at 491, 83 S.Ct. at 419, there is no evidence that any such intervening event occurred here between the alleged seizure and the consent. *Accord Taylor,* 457 U.S. at 694, 102 S.Ct. at 2669; *Dunaway,* 442 U.S. at 218–19, 99 S.Ct. at 2259–60; *Timberlake,* 896 F.2d at 595; *Thompson,* 712 F.2d at 1361–62.