UNITED STATES of America

v.

Carl O. JORDAN, Appellant.

No. 90–3286.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 21, 1991.

Decided After Remand of Record
March 17, 1992.

Michael H. Stone, New York City, for appellant. Byron Anderson, Washington, D.C. (appointed by the Court) was on the brief, for appellant.

Thomas J. Tourish, III, Asst. U.S. Atty., Dept. of Justice, Washington, D.C., for appellee. Jay B. Stephens, U.S. Atty., John R. Fisher, Thomas C. Black, Clendon Lee and William C. Snyder, Asst. U.S. Attys., Dept. of Justice, Washington, D.C., were on the brief, for appellee.

Before MIKVA, Chief Judge, WALD and BUCKLEY, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

Carl O. Jordan appeals his conviction for possession of cocaine with intent to distribute, and possession of marijuana, on the ground that the district court erroneously failed to suppress evidence obtained in violation of the fourth amendment. After briefing and oral argument, this court retained jurisdiction but remanded the record to the district court "for clarification of the findings" underlying its legal conclusion that no seizure occurred; in particular we asked the district court to make a specific finding concerning "whether Jordan turned over his driver's license to Officer Coates ... and, if so, whether Coates retained Jordan's driver's license at the time he asked to search Jordan's bag." *See United States v. Jordan*, 951 F.2d 1278, 1283 (D.C.Cir.1991). The district court subsequently issued a "Supplemental Opinion" ("Sup. op.") concluding again that no seizure occurred but including a finding "that the defendant's driver's license was retained by Officer Coates while he was questioning the defendant." *United States v. Jordan*, Cr. No. 90–00212–01 (D.D.C. Feb. 6, 1992), Sup. op. at 9. Based

on this supplementation to the record, we now hold that Jordan had been "seized" at the time he consented to the search of his bag, the discovery of the drugs was a direct product of a seizure for which the government admits there was no probable cause or even reasonable suspicion, *see Jordan*, 951 F.2d at 1280–81; and accordingly the drugs should have been suppressed, and the conviction based upon them must be reversed.

The circumstances surrounding Jordan's encounter with the police were set out in our prior opinion, *see id.* at 1279–80. We now reiterate the most significant ones, along with the supplemental factual findings of the district court.

## I. Facts

On the evening of April 14, 1990, Jordan got off an intercity bus in Washington, D.C. and walked quickly through the bus terminal out to the public parking lot. Jordan met a man at the exit doors, and the two walked over to a parked car. As the two men opened the driver's side door and prepared to climb into the car, police detective Lawrence Coates approached Jordan and engaged him in conversation. Another police officer circled around and stood five yards behind Jordan while Coates questioned him.

Coates identified himself as a narcotics officer and asked to see Jordan's identification and bus ticket. Jordan handed Coates his New York driver's license and ticket. While retaining Jordan's driver's license, Coates continued with the interview. He told Jordan of his unit's drug interdiction mission, and asked Jordan if he was carrying any drugs. Jordan replied that he was not. While continuing to withhold Jordan's driver's license, Detective Coates then asked for permission to search the tote bag Jordan was carrying. Jordan offered no resistance, placing the bag on the hood of the car. The ensuing search discovered the drugs for which possession Jordan was convicted.

## II. Discussion

■ The district court concluded that Jordan was not "seized" under the facts of this case within the meaning of the fourth amendment. Whether a seizure occurred is a legal conclusion that this court reviews *de novo. See, e.g., United States v. Maragh*, 894 F.2d 415, 417 (D.C.Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 214, 112 L.Ed.2d 174 (1990).

"A person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); *accord Michigan v. Chesternut*, 486 U.S. 567, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988). The Supreme Court has further explicated the seizure test: "In order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether *police conduct* would have communicated to a reasonable person that the person was not free to decline the officer's request or otherwise terminate the encounter." *Florida v. Bostick*, —— U.S. ——, 111 S.Ct. 2382, 2389, 115 L.Ed.2d 389 (1991) (emphasis added). The test looks to "not whether the citizen perceived that he was being ordered to restrict his movement, but *whether the officer's words and actions* would have conveyed that to a reasonable person." *California v. Hodari D.*, —— U.S. ——, 111 S.Ct. 1547, 1551, 113 L.Ed.2d 690 (1991) (emphasis added). Additionally, for the police conduct to effect a seizure the person must actually have submitted to the "show of authority." *Id.* 111 S.Ct. at 1551–52.

The test for a seizure "considers all the circumstances surrounding the encounter." *Bostick*, at 2389; *see also Chesternut*, 486 U.S. at 567, 108 S.Ct. at 1975 ("totality of the circumstances"). Under such a test, only in rare instances will any one factor produce an inexorable conclusion that a seizure has occurred.[1] On the other hand,

---

**1.** If, for example, police were to aim drawn weapons, that circumstance alone would com-

the "totality of the circumstances" test "does not mean that each and every circumstance in the case must be assumed to have the same degree of relevance and weight." *See* Wayne R. LaFave, *Pinguitudinous Police, Pachydermatous Prey: Whence Fourth Amendment 'Seizures'?*, 1991 ILL.L.REV. 729, 746. Acknowledgedly, many circumstances in this case point in the direction of a benign police/citizen encounter: the police were dressed in plainclothes; their weapons were hidden; they spoke in conversational tones; and they did not physically block Jordan's path.

One circumstance, however, reflects a distinct departure from the typical consensual scenario. The police asked for, took, and *retained* Jordan's driver's license while they continued questioning him. In the context of police questioning at an airport, the Supreme Court highlighted the message conveyed by the deliberate withholding by police of an interviewee's critical identification and travel papers during questioning:

> [A]sking for and examining [a detainee's] ticket and his driver's license were no doubt permissible in themselves, but when the officers ... asked him to accompany them to the police room, *while retaining his ticket and driver's license* and without indicating in any way that he was free to depart, [the detainee] was effectively seized for the purposes of the Fourth Amendment.

*Florida v. Royer*, 460 U.S. 491, 501–02, 103 S.Ct. 1319, 1326, 75 L.Ed.2d 229 (1983) (emphasis added). In *Royer* the Court found that when the police asked the defendant to go with them to an interview room *while* retaining his ticket and license, they had

restrained his movements to a degree that implicated the fourth amendment. Without his ticket and license, the defendant was not able to "decline the officer's request" for an interview, *see Bostick* 111 S.Ct. at 2389, and go about his original business. The Court recognized that abandoning one's driver's license (or other papers such as a passport, green card, or ticket if still in transit) is simply not a practical or realistic option for a "reasonable" traveler in this day and age.

Our court has also considered on several occasions the effect on citizens stopped by the police of being asked to hand over critical identification or travel documents *and having the police retain them* while questioning ensues, noting that "once the identification is handed over to police and they have had a reasonable opportunity to review it, if the identification is not returned to the detainee [it is] difficult to imagine that any reasonable person would feel free to leave without it." *United States v. Battista*, 876 F.2d 201, 205 (D.C.Cir.1989); *see also United States v. Lewis*, 921 F.2d 1294, 1297 (D.C.Cir.1990) ("whether the officer ... retained [defendant's] identification or travel ticket" is a "relevant factor" in seizure analysis); *United States v. Savage*, 889 F.2d 1113, 1117 n. 3 (D.C.Cir.1989) ("failing to return a traveler's ticket after sufficient time to peruse it had elapsed [may] be tantamount to a detention" if it prevents traveler "from going about his 'ordinary business' ").[2]

At oral argument, government counsel, with admirable candor, allowed that "the failure to return documents such as this are [sic] a substantial factor in determining whether there is a seizure or detention."[3]

---

municate to a reasonable person that he was not free to leave.

**2.** Other circuits have also stated that police withholding of a person's identification conveys a definite message that the person is not free to leave. *See, e.g., United States v. Cordell*, 723 F.2d 1283, 1285 (7th Cir.1983), *cert. denied*, 465 U.S. 1029, 104 S.Ct. 1291, 79 L.Ed.2d 693 (1984) (seizure occurred when policeman handed defendant's license and ticket to another policeman and continued questioning); *United States v. Thompson*, 712 F.2d 1356, 1359 (11th Cir. 1983) (questioning of person while in his car

"matured into" a seizure when police retained his driver's license after examining it); *United States v. Waksal*, 709 F.2d 653, 660 (11th Cir. 1983) ("We fail to see how appellant could have felt free to walk away from police officers when they still possessed [his ticket and driver's license].").

**3.** The government originally argued that the seizure issue involving retention of Jordan's license had not been properly raised in the trial court. *See Jordan*, 951 F.2d at 1280 n. 1. When asked by the panel whether a potential fourth

Accordingly, we remanded the record for the district judge to make more specific findings on the license retention issue. In finding on remand that there had been no seizure, despite the retention of Jordan's license during questioning, the district court reasoned that nothing prevented the defendant from asking for his license back and proceeding on his way. Sup. op. at 13 n. 3. We do not find that answer persuasive. The question of whether a seizure occurred in the first place depends on what the original *police conduct* reasonably communicated to the individual stopped; if that conduct transmitted a clear signal that the individual was not free to leave, the law does not require that he validate that impression by affirmatively challenging the police retention of his license. It is likely that a person unintimidated enough to ask for his license back has not in fact been subjected to a cognizable restraint in the first place.

Given that the test enunciated by the Supreme Court for a seizure turns on whether a reasonable person would feel free to "disregard the police and go about his business," *see Chesternut*, 486 U.S. at 576, 108 S.Ct. at 1981, it becomes crucial to focus on what the person's immediate "business" is, in order to decide if the police retention of his papers would likely impede his freedom to proceed with it. Thus, in several of our cases involving police questioning on a bus or train, *see, e.g., United States v. Lewis*, 921 F.2d 1294 (D.C.Cir.1990); *United States v. Tavolacci*, 895 F.2d 1423 (D.C.Cir.1990); *Savage*, 889 F.2d at 1113, we have concluded that the passenger could not reasonably perceive restraint stemming from the police conduct because his only current "business" was to

continue his journey or to await the departure of the train or bus, *accord Bostick*, 111 S.Ct. at 2386–87. The temporary removal of his ticket or identification would not interfere with such "business." Had Jordan been standing in line to buy a ticket, already on a bus awaiting its departure or arrival, or even waiting for a train on a platform, this would be a harder case. For the temporary deprivation of his identification or travel documents might not significantly interfere with his intended movements, at least if that deprivation lasted only a few moments. But Jordan's immediate "business" was quite different; he was intent on getting into a waiting car at six o'clock at night in order to leave the scene altogether; that circumstance, combined with the fact that the police continued to retain his license at the moment they asked permission to search his tote bag pushes his case over the line. The inevitable effect produced by the police action in holding his license was that he was not free to disregard the police and go about his business, which was to enter his car and drive away.[4]

In sum, what began as a consensual encounter between Coates and Jordan graduated into a seizure when the officer asked Jordan's consent to a search of his bag, after he had taken and still retained Jordan's driver's license. We reluctantly conclude that the district court erred in finding, under these circumstances, that Jordan had not been seized within the meaning of the fourth amendment. Given that the police acknowledgedly lacked even that quantum of articulable suspicion that would have made a brief *Terry*-style detention reasonable, *see United States v. Sokolow*, 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1

amendment problem existed *if* the seizure issue were properly before the court, government counsel responded, "yes, absolutely."

**4.** Contrary to the district court's reading, *see* Sup. op. at 15, this court's decision in *Tavolacci*, 895 F.2d at 1423, in no way compels a different result in this case. In *Tavolacci,* the police did not ask the defendant if he was carrying drugs or ask to search his bag until *"after returning* [his] ticket and license." *Id.* at 1426 (emphasis added). In no previous case considered by this court did the police retain the suspect's identifi-

cation after examining it. *See, e.g., United States v. Lewis*, 921 F.2d 1294 (D.C.Cir.1990); *United States v. Carrasquillo*, 877 F.2d 73 (D.C.Cir.1989); *see also United States v. Samuels*, 938 F.2d 210, 212 (D.C.Cir.1991) (police requested to examine bus ticket during intermediate stopover, but promptly returned it before further questioning); *United States v. Baskin*, 886 F.2d 383, 385 (D.C.Cir.1989), *cert. denied*, 494 U.S. 1089, 110 S.Ct. 1831, 108 L.Ed.2d 960 (1990) (same).

(1989); *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), their action resulted in an illegal seizure of Jordan.

■ The only remaining issue is whether the narcotics obtained from the search had to be suppressed for taint stemming from the seizure. Our previous opinion in this case, *see Jordan,* 951 F.2d at 1283 n. 3, discussed at greater length the general rule that evidence secured as the result of an illegal search or seizure is tainted "fruit of a poisonous tree," and not admissible at trial. *Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963). Unless an intervening event or other attenuating circumstance purges the taint of the initial illegality, evidence discovered during an illegal seizure must be suppressed. *See Taylor v. Alabama,* 457 U.S. 687, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982); *Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *Wong Sun,* 371 U.S. at 486, 83 S.Ct. at 416; *United States v. Timberlake,* 896 F.2d 592 (D.C.Cir.1990). The record reveals no such intervening event between the time Jordan was seized and the time his tote bag was searched to break the causal chain. Thus the drugs should have been suppressed.

### III. CONCLUSION

Because Jordan's conviction rested on physical evidence the police obtained through an unlawful search and seizure, we reverse the conviction and remand for proceedings consistent with this opinion.

*It is so ordered.*