**The PEOPLE of the State of Colorado, Plaintiff–Appellant,**

v.

**Shawn Adrian PAYNTER, Defendant–Appellee.**

**No. 97SA409.**

Supreme Court of Colorado, En Banc.

March 16, 1998.

David J. Thomas, District Attorney, First Judicial District, Donna Skinner Reed, Chief Appellate District Attorney, Golden, for Plaintiff–Appellant.

David F. Vela, Colorado State Public Defender, Kristi L. Sanders, Deputy State Public Defender, Golden, for Defendant–Appellee.

Justice SCOTT delivered the Opinion of the Court.

The People bring this interlocutory appeal to challenge a suppression order entered by the Jefferson County District Court (trial court). The order suppressed marijuana found during a search conducted as part of the county jail booking procedure. The trial court ruled that the marijuana was discovered as a direct result of an invalid investigatory stop that occurred the instant the police officer asked the defendant for his identification. However, that *per se* rule fashioned and applied by the trial court is erroneous. "[A] request for identification by the police does not, by itself, constitute a Fourth Amendment seizure." *See INS v. Delgado,* 466 U.S. 210, 216, 104 S.Ct. 1758, 1762, 80 L.Ed.2d 247 (1984). Similarly, it does not convert a consensual encounter into an investigatory stop. Because it relied upon a per se rule and, hence failed to apply the correct standard, we reverse the trial court's ruling and vacate its order.

I.

On April 2, 1997, at approximately 11:55 p.m., while on evening patrol of his district, Officer Greg Guzman of the Arvada Police Department observed a car parked on the northwest corner of 58th Avenue and Vance Street in Arvada. He observed that the lights of the vehicle were off and that there were two occupants inside. The vehicle was parked on a public street near a private residence, approximately two blocks from the nearest commercial establishment that was still open for business. The vehicle was not illegally parked.

Officer Guzman parked his marked patrol car behind the vehicle. He turned on his side spotlight to provide some illumination, but did not activate his siren or any other lights. He walked up to the driver's side of the parked car and contacted Ms. Alm, who was seated in the driver's seat. Defendant, Shawn Adrian Paynter, was seated in the front passenger seat. Officer Guzman inquired as to what they were doing, and Alm responded that they were just talking. Neither Alm nor Paynter appeared to be in need of any type of assistance.

Officer Guzman then "asked" for identification, and both Alm and Paynter complied. Noticing from their identification that neither Alm nor Paynter lived in the area, the officer told Alm and Paynter that he would "be back in a minute." He returned to his patrol car with the identification cards for the purpose of conducting a computer check on the names of the driver and the defendant. Within a minute, the Arvada Police dispatcher informed Officer Guzman that a threats complaint was on record naming Paynter as the suspect. Shortly thereafter, Officer Guzman was advised that Paynter had an outstanding felony warrant for his arrest. Following the usual procedure to effect an arrest, Officer Guzman called for backup and when the cover car arrived, Paynter was arrested. Approximately five minutes elapsed between the officer's initial contact with Paynter and Paynter's arrest.[1]

---

1. The trial court did not make any findings regarding the length of time that passed after the request for identification. We draw our statement of facts regarding the events that transpired after the request for identification from our reading of the transcript of the testimony of Officer Guzman.

Following Paynter's arrest, Officer Guzman conducted a pat-down search of Paynter. During the search, he discovered Zigzag cigarette rolling papers, commonly used for marijuana. The officer then asked Paynter if he had any marijuana on him and Paynter stated he did not.

Thereafter, Officer Guzman transported Paynter to the Jefferson County Jail. At the jail, Deputy William Underhill had Paynter face a wall and directed him to read the contraband warning sign. Deputy Underhill asked Paynter if he had on his person any of the contraband items referred to in the warning sign and Paynter answered "no." Paynter was also asked if he had anything the arresting officer may have missed, and Paynter answered "no." This questioning was part of the booking procedure. While still dressed, Paynter was searched. Deputy Underhill then escorted Paynter to the shower area for a strip search. During the strip search, Paynter was found to be hiding a cigarette packet containing marijuana.

Paynter was charged with introducing contraband in the first degree in violation of section 18–8–203(1)(a), 6 C.R.S. (1997). Paynter pleaded not guilty before the Jefferson County District Court (trial court) and filed a motion to suppress the marijuana found in the cigarette packet. At the suppression hearing, Paynter argued that because Officer Guzman had no reasonable articulable suspicion of criminal activity, the officer's request for identification violated the Fourth Amendment. Accordingly, Paynter contended that the marijuana seized from him during the strip search should be suppressed because the seizure was a direct result of the illegal stop. The trial court agreed, concluding that there was no reasonable articulable suspicion of criminal activity to support Officer Guzman's request for defendant's identification, and that had it not been for this request, Paynter would not have been arrested. Therefore, concluding the request constituted a seizure, the trial court granted Paynter's motion to suppress the marijuana.

The People subsequently filed this interlocutory appeal,[2] disputing the trial court's finding that the request for identification amounted to a seizure. We agree with the People and hold that a request for identification, without more, does not convert a consensual encounter into a seizure which requires Fourth Amendment protection. We therefore vacate the trial court's suppression order and return this case to the trial court for further proceedings consistent with this opinion.

## II.

### A.

■ The Fourth Amendment to the United States Constitution provides that the people shall "be secure in their persons ... against unreasonable searches and seizures." U.S. Const. amend IV. "The Fourth Amendment does not proscribe all contact between police and citizens, but is designed 'to prevent arbitrary and oppressive interference with the privacy and personal security of individuals.'" *Delgado*, 466 U.S. at 215, 104 S.Ct. at 1762 (quoting *United States v. Martinez–Fuerte*, 428 U.S. 543, 554, 96 S.Ct. 3074, 3081, 49 L.Ed.2d 1116 (1976)). Thus, only when a police officer's encounter with a citizen impermissibly intrudes upon the citizen's personal security or privacy are the protections guaranteed by the United States Constitution implicated. *See generally* 4 Wayne R. LaFave, *Search & Seizure* § 9.3 (3d ed.1996). Some encounters between the police and citizens do not trigger Fourth Amendment protections: "[N]ot all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Terry v. Ohio*, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1879 n. 16, 20 L.Ed.2d 889 (1968).

■ Accordingly, the United States Supreme Court has held that law enforcement officers do not implicate the protections af-

**2.** We have jurisdiction over this appeal pursuant to section 16–12–102(2), 6 C.R.S. (1997).

forded by the Fourth Amendment by merely approaching an individual on the street or in another public place. *See Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983). The fact that an officer identifies himself as a police officer, without more, does not convert an encounter into a constitutionally protected seizure. *See id.* Unless the circumstances of the encounter are so intimidating as to demonstrate that a reasonable person would believe he is not free to leave if he does not comply, one cannot say that questioning results in a seizure protected by the Fourth Amendment. *See Delgado*, 466 U.S. at 216, 104 S.Ct. at 1762.

■■■ Our precedent has followed and is consistent with Supreme Court decisions. We have recognized three general categories of police-citizen encounters: (1) arrests, (2) investigatory stops, and (3) consensual interviews. *See People v. Morales*, 935 P.2d 936, 939 (Colo.1997). The first two encounters, an arrest and an investigatory stop, are seizures and implicate constitutional protections. Therefore, such encounters must be justified by probable cause and reasonable articulable suspicion of criminal activity, respectively. *See People v. Melton*, 910 P.2d 672, 676 (Colo.1996). The third encounter, a consensual interview, is not a seizure and, accordingly, does not implicate the protections of the Fourth Amendment. During a consensual interview, a police officer seeks the voluntary cooperation of an individual by asking non-coercive questions. *See People v. Thomas*, 839 P.2d 1174, 1177 (Colo.1992). A citizen is free to leave at any time during such an encounter or to ignore the police officer's questions. *See id.; see also People v. Cascio*, 932 P.2d 1381, 1384–85 (Colo.1997) (consensual encounter with occupants of parked vehicle); *People v. Johnson*, 865 P.2d 836, 843 (Colo.1994) (consensual encounter at an airport); *Thomas*, 839 P.2d at 1177 (investigatory stop of moving vehicle followed by consensual encounter).

### B.

■■■ In order to distinguish between a consensual encounter and a seizure, a trial court must take into account all of the circumstances surrounding the incident and determine whether a citizen reasonably believes he or she is free to leave. *See Michigan v. Chesternut*, 486 U.S. 567, 573, 108 S.Ct. 1975, 1979, 100 L.Ed.2d 565 (1988) ("The test provides that the police can be said to have seized an individual 'only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.' ") (citations omitted). *See generally* LaFave, *supra*, § 9.3(a). As we stated in *Thomas*, "[t]he test for determining if the encounter is a consensual one is whether a reasonable person under the circumstances would believe he or she was free to leave and/or to disregard the official's request for information." 839 P.2d at 1177–78; *see also People v. T.H.*, 892 P.2d 301, 303 (Colo.1995). This "reasonable person test presupposes an innocent person." *Johnson*, 865 P.2d at 842 (quoting *Florida v. Bostick*, 501 U.S. 429, 438, 111 S.Ct. 2382, 2388, 115 L.Ed.2d 389 (1991)). In applying the test, we rely upon an objective determination based on the factual circumstances surrounding the encounter. *See id.*, 865 P.2d at 842–43.

■■■ We have noted that a police-citizen encounter does not become a seizure simply because citizens may feel an inherent social pressure to cooperate with the police. *See id.; see also* Lawrence Tiffany et al., *Detection of Crime* 17 (1967) (specifically addressing "field interrogations," which involve questioning with or without consent; the author notes that persons comply in high-crime areas "for a variety of reasons, including a willingness to cooperate with police."). Similarly, however, a consensual encounter does not become an investigatory stop because the police do not inform the individual that he or she is free to leave. *See Delgado*, 466 U.S. at 216, 104 S.Ct. at 1762. "While most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response." *Id.; Melton*, 910 P.2d at 676.

■■■ Because the "touchstone" of the Fourth Amendment is reasonableness measured in objective terms, the Supreme Court has "consistently eschewed bright-line rules, instead emphasizing the fact-specific nature

of the reasonableness inquiry." *Ohio v. Robinette*, 519 U.S. 33, ——, 117 S.Ct. 417, 421, 136 L.Ed.2d 347 (1996). Hence, rather than rely upon a single factor and announce a *per se* rule, a court must consider the totality of the circumstances to determine whether the police exercised force or authority to effect a stop, or whether the police merely sought the voluntary cooperation of a citizen through a consensual encounter.

### C.

 Examining the totality of the circumstances surrounding Officer Guzman's initial contact with Paynter, we hold that Paynter was not subjected to a Fourth Amendment seizure when the officer approached the parked vehicle and asked the occupants for identification. Under the close question presented by this case, the trial court erred when, despite the factual underpinnings of this citizen-police encounter, it in effect adopted a *per se* rule. Concluding that there was no difference between a police officer's demand or request for a citizen's identification, the trial court ruled that Guzman's request for Paynter's identification, alone, constituted a seizure. We reject such a rule as contrary to the Supreme Court's "traditional contextual approach." *Robinette*, 519 U.S. at ——, 117 S.Ct. at 421 (citing *Chesternut*, 486 U.S. at 572–73, 108 S.Ct. at 1979).

Under the facts of this case, the officer approached Paynter's vehicle in a non-threatening manner, only turning on his side spotlight to provide illumination. There was no display of authority or control by activating the siren or any patrol car overhead lights. *See Cascio*, 932 P.2d at 1388 ("While we have recognized that the use of a spotlight can be a means of intimidation, there were no findings or implications here that the flashlights and spotlight were used in that manner.... Significantly, the deputies did not deploy the patrol car's overhead light bar."). After exiting his patrol car, Officer Guzman approached the vehicle on foot without his gun displayed. *Cf. United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980) (display of weapon by an officer is a factor to be considered in deter-

mining whether a reasonable person would have believed that he was free to leave). Although the trial court did not make any specific findings as to the officer's tone of voice, Officer Guzman testified at the suppression hearing that he then asked, without any show of force, what Paynter and his companion Alm were doing. *See Morales*, 935 P.2d at 940 (officer's tone of voice·indicating that compliance with the request for information might be compelled may indicate seizure). After Alm replied that they were just talking, the officer asked for Paynter's and Alm's identification. Up to this point and including the officer's request for identification, the officer's behavior was not "so intimidating as to demonstrate that a reasonable person would believe that he is not free to leave if he does not respond." *People v. Hill*, 929 P.2d 735, 737–38 (Colo.1996). Moreover, in our view, the record does not reflect the exercise of. force or authority.

Rather, the encounter to this point, including the request and citizen response, reflected a consensual encounter because Paynter's liberty was not restrained and his "voluntary cooperation ... [was] elicited through non-coercive questioning." *Johnson*, 865 P.2d at 842 (quoting *People v. Trujillo*, 773 P.2d 1086, 1089 (Colo.1989)). Consequently, leaving aside the inherent pressure felt by any citizen to cooperate with a law enforcement officer, the facts and circumstances of this encounter, up to and including Officer Guzman's request for defendant's identification, militate against a conclusion that the encounter was "so intimidating as to demonstrate that a reasonable, innocent person would have believed he was not free to leave if he had not responded." *Delgado*, 466 U.S. at 217, 104 S.Ct. at 1763.

The trial court, however, concluded that the officer's request for identification, by itself, amounted to a stop:

> The prosecution has urged that, no, that was just consensual. Under the circumstances, it doesn't seem to me that it was. *When a police officer comes up to you when you're talking in a car, asks you what you're doing, and then says, I want you to produce identification, it seems to*

*me that most people would take that as an order.*

. . . .

It seems to me that substantially all citizens in that circumstance would take the officer's conduct as tantamount to a demand that they produce identification, and at least if you're the driver of the vehicle, it is also a demand that you not move because you can't drive away while the officer has your driver's license.

*So it seems to me that at that point this was a detention,* or what is sometimes called a *Stone* stop here in Colorado, and the requirements of a *Stone* stop simply weren't met. There not only wasn't probable cause for this demand, there was no articulable suspicion justifying it, and therefore, in view of the Court, *the demand for identification was in violation of the Fourth Amendment rights of Ms. Alm and the defendant.*

(Emphasis added.) We are persuaded that the trial court's application of this incorrect standard presents a compelling case for reversing its ruling. *See People v. Reyes,* No. 97SA429, —— P.2d —— (Colo. Mar. 16, 1998) (district court erred by failing to apply automobile exception to warrant requirement, thus order of suppression reversed).

Moreover, our holding is consistent with our prior decisions. We distinguish the present case from *People v. Padgett,* 932 P.2d 810 (Colo.1997) and *People v. Cascio,* 932 P.2d 1381 (Colo.1997). In *Padgett,* two officers observed Padgett and a companion cross a street. When they exited their vehicle and asked Padgett if they could speak with him, "Padgett continued walking" away from the officers. *Id.* at 812. The officers then required Padgett to alter his direction of travel, walk back to where the officers were, and, after obtaining his identification, told Padgett that he could leave only "if they did not have any warrants" on him. *Id.* at 813. During the course of the warrants check, which lasted between four and fifteen minutes, Padgett repeatedly stated he wanted to leave and go home. *See id.* In response to a motion to suppress, the trial court suppressed evidence obtained from that encounter. On interlocutory review, we agreed with the trial court

that an investigative stop, not a consensual interview, occurred under the totality of the circumstances and facts found by the trial court. *See id.* at 814.

The instant case, however, is clearly distinguishable. In *Padgett,* the officers' intrusion, altered Padgett's course of travel and required him to stop against his repeatedly expressed desire to leave, thus impeding his liberty or freedom of movement. To the contrary, in this case, Paynter was seated, was not moving or walking, and did not express a desire to leave, nor did he at anytime indicate that Officer Guzman prevented him from going about his business. *See United States v. Jordan,* 958 F.2d 1085, 1088 (D.C.Cir.1992) (holding that defendant was "seized" where defendant was intent on getting into waiting car to leave bus terminal parking lot, and thus retention of his driver's license prevented him from going about his business); *United States v. Savage,* 889 F.2d 1113, 1117 n. 3 (D.C.Cir.1989) ("failing to return a traveler's ticket after sufficient time to peruse it had elapsed [may] be tantamount to a detention" if it prevents traveler "from going about his 'ordinary business'"); *United States v. McSwain,* 29 F.3d 558, 562 n. 1 (10th Cir.1994) (stressing the fact that the defendant was pulled over which would indicate "[t]o a reasonable person that he was not at liberty to ignore the police presence and go about his business"). In *Cascio,* we discussed the nature of an encounter between police and citizens sitting in a parked car, concluding that, without more, such an encounter is consensual in nature. *See Cascio,* 932 P.2d at 1386 ("[Here], the Cascios were already parked when the deputies spotted them, pulled in behind them, and walked to the van on foot. These circumstances are analogous to a situation in which a police officer who is on foot approached a pedestrian on a sidewalk rather than a full-blown automobile stop.").

### III.

### A.

Our decision today is limited therefore to reversing the trial court's ruling that when a police officer asks for identification, "at that

point," and solely on that factual basis, a consensual encounter is converted into a stop, a seizure that implicates the Fourth Amendment. However, we recognize that the sequence of events that occurs *after* a citizen voluntarily provides an officer his identification, including the length of time that the officer retains the identification card or a request, if any, by a citizen to be left alone or to be permitted to go about his or her business, could result in such a restraint that a citizen is not free to leave. In such a case, subsequent facts might convert a consensual encounter into a seizure. *Cf. Royer*, 460 U.S. at 511–12, 103 S.Ct. at 1331 (when officers took Royer to a small room, resembling a closet, while retaining his ticket and identification, and having retrieved his luggage from the airline, this added a "show of authority" which "in some way restrained [Royer's] liberty" sufficient to transform the initial consensual encounter into a Fourth Amendment seizure); *Mendenhall*, 446 U.S. at 554, 100 S.Ct. at 1877 (circumstances that may transform a non-custodial consensual encounter into a seizure include: "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled."); *see also United States v. Rodriguez*, 69 F.3d 136, 142 (7th Cir.1995) (although lengthy retention of documents such as identification or airline ticket is a factor in determining whether a stop has occurred for Fourth Amendment purposes, mere request for and voluntary production of drivers' licenses and airplane tickets does not constitute a seizure, but falls into category of non-coercive police-citizen encounter); *United States v. Lambert*, 46 F.3d 1064, 1068 (10th Cir.1995) ("when law enforcement officials retain an individual's driver's license in the course of questioning him, that individual, as a general rule, will not reasonably feel free to terminate the encounter"). Something more than non-coercive questioning is necessary to convert an initial consensual encounter into a seizure, implicating Fourth Amendment protections. *See Padgett*, 932 P.2d at 818; *Cascio*, 932 P.2d at 1387.

▮ Nonetheless, on this record, we disagree with the trial court's conclusion that Officer Guzman's request for identification, by itself, amounted to a seizure. It is well established that an officer's asking for identification alone does not amount to a seizure under the Fourth Amendment. *See Bostick*, 501 U.S. at 437, 111 S.Ct. at 2388 (stating that a seizure does not occur "when police ... ask to examine the individual's identification ... so long as the officers do not convey a message that compliance with their requests is required."); *Morales*, 935 P.2d at 937, 939 (concluding that officer's request for identification was a consensual encounter).

The trial court's characterization of Officer Guzman's request for identification as a "demand" is without support in the record. At the suppression hearing, Officer Guzman testified that he simply "asked" for identification. There is no indication that the officer conveyed the message that compliance with his request was required. *See Bostick*, 501 U.S. at 437, 111 S.Ct. at 2387. Additionally, there is no evidence or finding that Officer Guzman's request for identification was accompanied with physical force, authority, or any other restraint of the defendant's liberty. *See Evans*, 937 F.2d at 1537. For instance, the officer did not physically touch Paynter or Alm nor did he use his patrol car to block the pathway of Paynter's vehicle. *See Cascio*, 932 P.2d at 1386–87.

### B.

The trial court further erred when it suggested that the officer was required to inform Paynter that he had a right to refuse his request for identification. The trial court stated:

In this case, *the officer did not in any way suggest to them that they had the right to refuse. He didn't say, you know, I just need this to fill out my daily activity log, or anything like that. He didn't tell them that they were free to leave.* He told them to produce identification, or he asked them to produce identification.

(Emphasis added.) As the Supreme Court indicated in *Delgado*, 466 U.S. at 216, 104 S.Ct. at 1762, the fact that a police officer fails to inform a citizen that he or she is free

to leave during a consensual encounter does not mean that the encounter becomes an investigatory stop. Similarly, in *Robinette*, 519 U.S. at ——, 117 S.Ct. at 419, the Supreme Court held that the Fourth Amendment does not require the police to inform a motorist who had been lawfully seized that, after the completion of the seizure, he is free to go before his consent to a search will be considered voluntary. While it may be a factor to consider under the totality of the circumstances, there is simply no requirement that an officer must inform a citizen that she or he is free to go or is free not to respond to a request in order to ensure that a consensual encounter remains consensual and does not convert into a seizure. At the same time, however, that does not mean that consideration of all facts and events during a consensual encounter will not convert a contact between a citizen and the police from one that originally did not implicate Fourth Amendment protections into one that does, i.e., an investigatory stop or an arrest. *Cf. Robinette*, 519 U.S. at ——, 117 S.Ct. at 421 ("In applying th[e totality of the circumstances] test we have consistently eschewed bright-line rules, instead emphasizing the fact-specific nature of 'the reasonableness inquiry."); *Chesternut*, 486 U.S. at 567, 108 S.Ct. at 1976 (stating that no bright-line rule applicable to all investigatory pursuits can be fashioned).

## IV.

We hold here only that the trial court erred when it concluded that a police officer's request for identification, alone, constitutes a seizure implicating Fourth Amendment protections. Because the Supreme Court has rejected such per se rules when confronted by facts and circumstances implicating the Fourth Amendment, we reverse the trial court's ruling and vacate its order suppressing evidence obtained as a result of the officer's consensual encounter with Paynter. This matter is remanded to the trial court with directions that if it engages in further

proceedings, the court must examine the totality of the circumstances in order to determine if Paynter's encounter with Officer Guzman implicated his Fourth Amendment rights.

HOBBS, J., concurs in part and dissents in part, and MARTINEZ and BENDER, JJ., join in the concurrence and dissent.

Justice HOBBS concurring in part and dissenting in part.

I respectfully concur in part and dissent in part. I agree with the majority that when Guzman asked Paynter and his companion for identification the encounter was consensual, and I concur with the court's holding in this regard. *See I.N.S. v. Delgado*, 466 U.S. 210, 216, 104 S.Ct. 1758, 1762, 80 L.Ed.2d 247 (1984) ("a request for identification by the police does not, by itself, constitute a Fourth Amendment seizure"). However, when Guzman left Paynter and his companion and walked to his patrol car with their licenses to run a warrants check as if he were conducting a routine traffic stop,[1] the encounter ceased to be consensual and escalated into a detention or seizure for Fourth Amendment purposes. We need not return the case to the trial court. Based on the facts of record, that court was correct in concluding that an illegal investigatory stop occurred.

When the operative facts are not in dispute, we may reach the legal conclusion that is appropriate based on the facts of the case. *See People v. D.F.*, 933 P.2d 9, 15 (Colo.1997) (on interlocutory appeal, remand is not required when controlling facts are undisputed). The facts in this case are not contested. The trial court based its suppression order entirely on the uncontested testimony of the police officer. No issues of credibility or other facts remain to be determined. A remand serves no purpose other than ordering the trial court to determine uncontested facts and correct an erroneous ruling of law, a function within our domain to undertake on appeal.

---

1. In his testimony Guzman indicated that he probably talked to Alm and Paynter as he normally does "when I pull [someone] over." A traffic stop is a seizure within the meaning of the Fourth Amendment and is lawful when an officer

has reasonable suspicion of criminal activity and when the reason for the stop is related to the facts known to the officer at the time of the encounter. *See People v. Rodriguez*, 945 P.2d 1351, 1359 (Colo.1997).

The trial court concluded that an unconstitutional investigatory stop occurred. Although the trial court improperly centered its reasoning on the initial request for identification, the court justifiably ruled that Paynter was unlawfully detained.

Although the majority opinion refers to "the totality of the circumstances," *see* maj. op. at 73, it truncates its analysis to focus only on the request for identification and, thereby, fails to account for the uncontested circumstances of the encounter as a whole. The Supreme Court has explained that "any assessment as to whether police conduct amounts to a seizure implicating the Fourth Amendment must take into account 'all of the circumstances surrounding the incident.'" *Michigan v. Chesternut*, 486 U.S. 567, 572, 108 S.Ct. 1975, 1979, 100 L.Ed.2d 565 (1988).

Guzman approached a couple sitting in a parked car because he "felt it was suspicious." The car was not illegally parked, nor were the occupants engaged in any type of disturbance or altercation. However, Guzman proceeded to park behind the individuals. He turned on the patrol car's spotlight and approached the car. He then requested and was given identification that matched both individuals.

After verifying their identities Guzman walked back to his patrol car, identifications in hand. Under these circumstances, his retention of the identifications under a show of authority constituted a detention. He did not give back the identifications; nor did he ask permission to take them to his patrol car; nor did he continue a consensual conversation. He simply took the identifications and walked away. I would hold that Guzman terminated the consensual encounter at this point and that the continuing police action created an unlawful seizure for Fourth Amendment purposes.[2] In other words, the officer engaged in conduct involving more than non-coercive questioning at a point in time when he possessed no reasonable articulable suspicion of criminal activity. As the district court observed, one cannot leave under these circumstances because "you can't drive away while the officer has your driver's license." *See* § 42–2–101(1), 11 C.R.S. (1997) (a license is required to operate a car legally in this state); *see also United States v. Thompson*, 712 F.2d 1356, 1359 (11th Cir. 1983) (seizure occurred where officer retained driver's license of car's driver, because "[i]f Thompson had tried to drive away he could have been arrested for driving without a license").

The Fourth Amendment and its Colorado counterpart protect from governmental intrusion one's reasonable expectation of privacy. *See People v. Schafer*, 946 P.2d 938, 942 (Colo.1997). "In the absence of any basis for suspecting ... misconduct, the balance between the public interest and [one's] right to personal security and privacy tilts in favor of freedom from police interference." *Brown v. Texas*, 443 U.S. 47, 52, 99 S.Ct. 2637, 2641, 61 L.Ed.2d 357 (1979) (invalidating a statute requiring persons to produce identification to authorities on demand without reasonable suspicion). When a person is not reasonably suspected of any wrongdoing, the police have no right to detain him or her. *See, e.g., Rodriguez*, 945 P.2d at 1359.

In *People v. Thomas*, 839 P.2d 1174 (Colo. 1992), we set forth the standard for determining whether an encounter is consensual or is an unlawful detention:

> The test for determining if the encounter is a consensual one is whether a reasonable person under the circumstances would believe he or she was free to leave and/or to disregard the official's request for information.

*Id.* at 1177–78. *See also People v. Padgett*, 932 P.2d 810, 813 (Colo.1997) (holding that defendant was not free to leave when officer

---

**2.** The majority states that the time between the officer's initial contact with Paynter and Paynter's arrest comprised a total of five minutes. *See* maj. op. at 70–71. However, Guzman's testimony also can be read as stating that he spent five minutes in the patrol car:

Q. How long were you in your patrol car with their ID cards?

A. Well, it was only about a minute, not even a minute, when I cleared him that they told me he was a suspect in a threats complaint. So it was almost immediate that I was told of that. But total time after everything came with the confirmed warrant, five minutes; and then he was placed in custody.

directed defendant to stay while he conducted a warrants check).

Here, Paynter and his companion had no choice but to comply when the officer required them to wait. They could not have communicated their desire to depart because he broke communication with them by walking toward his patrol car and taking with him the licenses they needed to operate the car legally. *See United States v. Jordan,* 951 F.2d 1278, 1282 (D.C.Cir.1991) ("once the identification is handed over to police and they have had a reasonable opportunity to review it, if the identification is not returned to the detainee [it is] difficult to imagine that any reasonable person would feel free to leave without it"); *Richmond v. Commonwealth,* 22 Va.App. 257, 468 S.E.2d 708, 710 (1996) (seizure occurred because a reasonable person "would not have believed that he could terminate the encounter once the officer retained the driver's license and returned to his police vehicle to run a record check"); *see generally* 4 Wayne R. LaFave *Search and Seizure* § 9.3(a) (3d ed.1996) 103 & n. 74 (for discussion and other cases).

The majority opinion holds that the trial court committed error in its focus on the initial request for identification. I agree. The majority, on remand, apparently leaves the trial court free to substitute a more appropriate legal analysis based on the uncontested facts or take additional testimony and make additional findings. But, as an appellate court in this circumstance, we can correct the trial court by applying the appropriate reasoning and we should do so here.

Accordingly, I respectfully concur in part and dissent in part.

I am authorized to say that MARTINEZ and BENDER, JJ., join in this concurrence and dissent.

