532 S.E.2d 37

**Diana WADE, et al., Plaintiffs Below, Appellants,**

v.

**K.M. CHENGAPPA, M.D., Donald Blum, M.D., and Wetzel County Hospital Association, Defendants Below, Appellees.**

No. 24636.

Supreme Court of Appeals of West Virginia.

Submitted March 9, 1999.

Decided July 12, 1999.

Dissenting Opinion of Justice Starcher July 20, 2000.

David A. Jividen, Esquire, James A. Stoneking, Esquire, Bordas, Bordas & Jividen, Wheeling, West Virginia, Attorneys for Appellants.

James F. Companion, Esquire, Sandra K. Law, Esquire, Schrader, Byrd & Companion, Wheeling, West Virginia, Attorneys for Appellees.

PER CURIAM:

This is an appeal by Diana Wade and her husband from a judgment of the Circuit Court of Wetzel County awarding them $24,455.71 on the basis of a jury verdict in a medical malpractice action. On appeal, the appellants claim that the circuit court erred in failing to strike one of the prospective jurors in the case for cause, and they also claim that the verdict amount returned by the jury was inadequate as a matter of law.

I.

FACTS

On May 25, 1990, Dr. K.M. Chengappa, a surgeon, performed a hysterectomy on Diana Wade at Wetzel County Hospital. In the course of the surgery, a retractor was placed against Diana Wade's femoral nerve and, following the surgery, Diana Wade developed a condition which was diagnosed as femoral neuropathy.

Subsequently, Diana Wade and her husband instituted the present civil action charging that the placement of the retractor, and Dr. K.M. Chengappa's failure to monitor Ms. Wade's neurological responses to it, constituted negligence. The case against Dr. K.M. Chengappa was tried before a jury commencing on July 8, 1996, and concluding on July 11, 1996.[1]

Prior to the actual commencement of trial, the court and the attorneys for the parties engaged in extensive voir dire of the prospective jurymen. In the course of the voir dire, information was developed indicating that one of the prospective jurymen, James Ronald Long, and his family, were treated by a Dr. Miller whose backup physician was Dr. K.M. Chengappa's wife, Dr. Leela Chengappa. Although the defendant Dr. K.M. Chengappa had never acted as backup physician or treated Mr. Long or his family, and although Dr. Leela Chengappa had not been involved in Ms. Wade's surgery, counsel for Ms. Wade moved that the trial court strike prospective juror Long for cause. The trial judge denied that motion, and, subsequently, the attorney used one of his peremptory strikes to exclude prospective juror Long from the jury.

During the subsequent trial of the case, a stipulation was introduced showing that Diana Wade had paid Four Thousand Four Hundred Fifty–Five and $^{71}/_{100}$ Dollars ($4,455.71) for medical expenses as a result of Dr. K.M. Chengappa's alleged negligence. Ms. Wade also testified and introduced evi-

---

1. Although there were originally other defendants in this case, it appears from the limited record before this Court that they were dismissed or otherwise ceased to be parties. The present appeal involves only the claims against Dr. K.M. Chengappa.

dence showing that she had endured pain and suffering, emotional distress and lost enjoyment of life as a result of her injury. At the conclusion of the trial, a special verdict form was submitted to the jury by which the jury was asked to assess Diana Wade's damages according to category. After deliberating, the jury found that Dr. K.M. Chengappa had in fact been negligent, and awarded Diana Wade and her husband Four Thousand Four Hundred Fifty–Five and 71/100 Dollars ($4,455.71) for past medical bills, and further awarded Twenty Thousand Dollars ($20,000.00) for pain and suffering, both past and future. The jury awarded no damages for mental anguish, which was defined as emotional and mental distress, embarrassment, humiliation, loss of personal dignity and inconvenience, and further awarded no damages for loss of enjoyment of life or for deformity or disfigurement or for Mr. Wade's loss of consortium.

After return of the verdict, Diana Wade and her husband moved for a new trial on the ground that the circuit court had erred in failing to strike prospective juror Long for cause, and on the further ground that the jury verdict was inadequate in that it did not include damages for all the elements proved. On November 12, 1996, the circuit court entered an order denying the Wades' motion for a new trial. It is from that order that Diana Wade and her husband now appeal.

## II.

## DISCUSSION

### A.

#### *Juror Issue*

■ The first claim that Diana Wade and her husband assert on appeal is that the circuit court erred in failing to strike prospective juror Long for cause.

As has been previously indicated, during voir dire, evidence was adduced showing that prospective juror Long and his family were treated by a Dr. Miller whose backup physician was Dr. Leela Chengappa, the wife of Dr. K.M. Chengappa against whom the present action was brought. Prospective juror Long acknowledged that Dr. Leela Chengappa was a backup doctor for his family's physician, and he indicated that Dr. Leela Chengappa had treated his father on an emergency basis for a stroke at Wetzel County Hospital. Prospective juror Long specifically testified that he had never personally been treated by Dr. Leela Chengappa, but that he had called in for medications.[2] He also indicated that on occasion while Dr. Leela Chengappa was acting in her backup role, his children and wife had personally seen her. Upon learning of prospective juror Long's relationship with Dr. Leela Chengappa, the court asked prospective juror Long: "Do you think knowing Dr. Chengappa's wife would have any influence on your decision-making abilities or qualities in this case? Would you—." Prospective juror Long responded: "I don't think so, no."

When cross-examined about his feelings relating to the Chengappas, prospective juror Long testified that the fact that he might have to sit on a case and render a verdict against Dr. K.M. Chengappa would not affect his using Dr. Leela Chengappa. He did say that he might hesitate to send his children back to her, but that would not be a problem because there were other physicians who could treat them. He further testified that he had never met Dr. K.M. Chengappa. He also stated that he felt that he could be fair and impartial, both to the defendant Dr. K.M. Chengappa and to the Wades.

As has been previously stated, at the conclusion of the examination of prospective juror Long, the trial court refused to strike him from the jury panel for cause, and Diana Wade's attorney subsequently used a peremptory strike to remove him from the jury.

As a general rule, W. Va.Code 56–6–12 provides standards relating to the qualifications of jurors and relating to such matters as to whether a prospective juror has an

---

**2.** It is unclear whether the juror was referring to Dr. Miller or Dr. Chengappa with respect to medications.

interest or bias toward a particular party. That statute states, in relevant part:

Either party in any action or suit may, and the court shall on motion of such party, examine on oath any person who is called as a juror therein, to know whether he is a qualified juror, or is related to either party, or has any interest in the cause, or is sensible of any bias or prejudice therein; and the party objecting to the juror may introduce any other competent evidence in support of the objection; and if it shall appear to the court that such person is not a qualified juror or does not stand indifferent in the cause, another shall be called and placed in his stead for the trial of that cause. And in every case, unless it be otherwise specially provided by law, the plaintiff and defendant may each challenge four jurors peremptorily.

■ Also, as a general rule, the determination of whether a juror may be biased or prejudiced is left to the discretion of the trial judge. *State v. Gargiliana*, 138 W.Va. 376, 76 S.E.2d 265 (1953).

In *West Virginia Department of Highways v. Fisher*, 170 W.Va. 7, 289 S.E.2d 213 (1982), this Court addressed the question of whether the fact that a prospective juror was acquainted with a physician who was a party to a case, or whether a physician/patient relationship existing between a party to litigation and a prospective juror, would result in the disqualification of the prospective juror from the panel which ultimately tried the case. In that case, we recognized that in many counties in West Virginia, which are rural and which have few doctors, it would be extremely difficult to find prospective jurors who did not have some acquaintance with a local physician. We examined the rationale for striking a prospective juror for cause, and we determined that the principal consideration in determining whether a prospective juror should be stricken for cause was not whether he knew a physician, or even whether he had a physician-patient relationship with him, but whether, without bias or prejudice, he could render a verdict solely on the evidence under the instructions in the case. In Syllabus Point 1 of *West Virginia Department of Highways v. Fisher, id.*, the Court reiterated

Syllabus Point 1 of *State v. Wilson*, 157 W.Va. 1036, 207 S.E.2d 174 (1974):

The true test as to whether a juror is qualified to serve on the panel is whether without bias or prejudice he can render a verdict solely on the evidence under the instructions of the court.

■ Further, in Syllabus Point 2 of *West Virginia Department of Highways v. Fisher, id.*, we concluded:

Where a physician-patient relationship exists between a party to litigation and a prospective juror, although such prospective juror is not disqualified *per se*, special care should be taken by the trial judge to ascertain, pursuant to *W.Va.Code*, 56–6–12 [1931], that such prospective juror is free from bias or prejudice.

In the present case, the relationship between prospective juror Long and the defendant K.M. Chengappa was less than a physician-patient relationship. Nothing which was brought forth during voir dire showed that Dr. K.M. Chengappa had ever personally treated prospective juror Long, and prospective juror Long specifically testified that he had never met Dr. K.M. Chengappa. On the other hand, prospective juror Long did have a tangential relationship with Dr. K.M. Chengappa's wife. Specifically, in her backup physician role, Dr. Leela Chengappa, Dr. K.M. Chengappa's wife, may have even telephonically prescribed medicine for prospective juror Long and had treated members of prospective juror Long's family.

As was recommended by the Court in *West Virginia Department of Highways v. Fisher, id.*, the trial court in the present case took special care to ascertain whether prospective juror Long was free from bias or prejudice. The trial judge himself questioned prospective juror Long and then allowed counsel for each party to question him separately. At no point did the trial judge adversely intervene in, or restrict, the examination of prospective juror Long by the appellants' attorney. As has previously been indicated, prospective juror Long persistently indicated that his knowledge of, or his family's relationship with Dr. Leela Chengappa would not influence his decision-making ability or his deci-

sion in the case. At the conclusion of the examination, he indicated that he could be fair and impartial both to K.M. Chengappa and the Wades during the trial of the case.

Although this presents the classic "close case," we believe that the trial court took the special care contemplated by *West Virginia Department of Highways v. Fisher, id.,* to determine whether prospective juror Long was free from bias or prejudice. Further, in view of the nature of the tangential relationship between prospective juror Long and Dr. K.M. Chengappa, and prospective juror Long's assertion that he could be fair and impartial, even after extensive examination by both the court and by Diana Wade's attorney, we cannot conclude that the trial judge abused his discretion or erred in ruling that prospective juror Long could remain on the panel of prospective jurors.

### B.

*Adequacy of the Verdict Issue*

█ Diana Wade's second assignment of error is that the damages awarded by the jury were inadequate as a matter of law.

█ In Syllabus Point 2 of *Bennett v. Angus,* 192 W.Va. 1, 449 S.E.2d 62 (1994), this Court reiterated Syllabus Point 2 of *Richmond v. Campbell,* 148 W.Va. 595, 136 S.E.2d 877 (1964), which states:

> Compensation for pain and suffering is an indefinite and unliquidated item of damages, and there is no rule or measure upon which it can be based. The amount of compensation for such injuries is left to the sound discretion of the jury, and there is no authority for a court to substitute its opinion for that of the jury. A mere difference of opinion between the court and the jury as to the amount of recovery in such cases will not warrant the granting of a new trial on the ground of inadequacy unless the verdict is so small that it clearly indicates that the jury was influenced by improper motives.

The Court has also indicated that where a damage issue has been tried by a jury, the allegation of inadequate damages should be weighed on appeal by viewing the evidence most strongly in favor of the defendant. *Pauley v. Bays,* 200 W.Va. 459, 490 S.E.2d 61 (1997) and *Lenox v. McCauley,* 188 W.Va. 203, 423 S.E.2d 606 (1992).

In the case presently before the Court, the evidence relating to the damages sustained by the appellants was rather conflicting. On direct examination, Diana Wade testified that the hysterectomy performed by Dr. K.M. Chengappa had required her to cease engaging in a number of the physical activities involving movement, bending and carrying which had previously been a substantial part of her life. She also testified that she had to resort to using a cane. Later, on cross-examination it was brought out that at a yard sale conducted in June of 1995, she had been able to move, bend and carry items without difficulty. As a consequence, her previous testimony suggesting that she was unable to engage in these activities was somewhat impeached. For instance, she, in describing the limiting effects of her injury, had indicated that she had had problems getting up from a squatting position and that she had had problems with falling and limping. On cross-examination, while being questioned about her activities during the yard sale, the following was adduced:

Q. And you didn't have any difficulty getting up from those squatting positions [on the day of the yard sale], correct?

A. Maybe. I don't always have difficulty. Maybe I didn't. This was in the morning. Maybe I didn't.

\* \* \*

A. . . . it was probably a good day.

Q. That would explain why you weren't have any—problems with falling or limping that day?

A. I never know when I'm going to fall.

Evidence was also adduced indicating she had carried on that day a box of baby clothes approximately 30 feet from her porch to the location of the yard sale, and that the box had weighed 25 to 30 pounds.

In view of the nature of this testimony, and the overall evidence in the case, the Court believes that the extent of the damages suffered by the appellants was a jury question and that when the evidence as a whole is

read in favor of Dr. K.M. Chengappa, a jury plausibly and properly could have returned the verdict which it did, in fact, return.

■ Diana Wade also claims that the verdict was inadequate because it did not award her damages in each of the categories set out in the special verdict form, the implication being that the jurors did not consider, or properly deliberate upon, the damages encompassed in those categories. In returning the special jury verdict form, the jury specifically awarded zero dollars in damages in the categories in question. So, contrary to the implications of Diana Wade's assertions, the jury apparently did deliberate upon the damages in each of the categories.[3]

In view of the foregoing, this Court cannot conclude that the jury's verdict was inadequate as a matter of law. Consequently, the judgment of the Circuit Court of Wetzel County is affirmed.

Affirmed.

Justice McGRAW dissents.

STARCHER, Justice, dissenting:

(Filed July 20, 2000)

In *West Virginia Department of Highways v. Fisher,* 170 W.Va. 7, 289 S.E.2d 213 (1982), we considered the circumstances of a doctor, who had practiced medicine in a rural county in excess of 40 years, being sued by the Department of Highways in an eminent domain proceeding. We held that because some of the jurors had a doctor-patient rela-tionship with the doctor, the Department of Highways did not get a fair trial. We stated at Syllabus Point 2:

> Where a physician-patient relationship exists between a party to litigation and a prospective juror, although such prospective juror is not disqualified *per se,* special care should be taken by the trial judge to ascertain, pursuant to *W.Va.Code,* 56–6–12 [1931], that such prospective juror is free from bias or prejudice.

We therefore reversed the verdict awarding compensation to the doctor and sent the case back to the circuit court for a retrial.

The majority opinion has turned our holding in *Fisher* on its head. The focus of *Fisher* was how much money the doctor-landowner should receive from the State in an eminent domain proceeding. We held that the doctor's medical relationship with some jurors was too strong, and set aside the verdict.

In the instant case, the defendant doctor is being sued for medical malpractice. The competency of the doctor to practice medicine is being challenged. On the jury panel were people who had received medical care from the doctor, or from the doctor's wife. The majority opinion turned *Fisher* on its head to conclude that because there was no *per se* disqualification of jurors simply because of a doctor-patient relationship, then there should be no disqualification at all. This is absurd.

---

**3.** The verdict form was filled out as follows:

**VERDICT FORM**

We, the jury, find for the Plaintiffs, and assess the following damages for Diana Wade:

(a) Past medical bills incurred in the past — $ 4,455.71

(b) Physical pain and suffering, past and future — $20,000.00

(c) Any damages caused by mental anguish, past and future. Mental anguish may include emotional and mental distress, embarrassment, humiliation, loss of personal dignity, and inconvenience — $ –0–

(d) Loss of enjoyment of life, past and future — $ –0–

(e) Damages for Deformity or Disfigurement — $ –0–

TOTAL DAMAGES DIANA WADE — $24,455.71

We, the jury, find that the Plaintiff, Roger Wade, is entitled to recover the following amount as damages for loss of consortium, including society, companionship, comfort, guidance, kindly offices and advice of Diana Wade, his wife:

TOTAL DAMAGES ROGER WADE — $ –0–

/s/ Pat Goots
FOREPERSON

DATED: July 11, 1996

The zeros were boldly set forth in the handwriting of the jury foreperson.

The medical competency of the defendant doctor was being challenged. It was totally unfair for the plaintiff's case to be judged by jurors who relied upon the competency of the defendant doctor and his doctor wife for their own medical care. Our holding in *Fisher* cries out for a reversal of the jury's verdict, not an affirmance.

I therefore dissent.