The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Demetris O'NEAL, Defendant–Appellant.

No. 99CA0435.

Colorado Court of Appeals,
Div. V.

Dec. 21, 2000.

Certiorari Denied Oct. 1, 2001.

Ken Salazar, Attorney General, Roger G. Billotte, Assistant Attorney General, Denver, CO, for Plaintiff–Appellee.

C. Keith Pope, Boulder, CO, for Defendant–Appellant.

Opinion by Judge NIETO.

Defendant, Demetris O'Neal, appeals a judgment of conviction entered upon a jury verdict finding him guilty of reckless manslaughter. Defendant also appeals his sentence. We affirm.

Defendant and three other men brutally assaulted a taxi cab driver after a minor collision in a parking lot. The victim was punched and kicked, and the assailants stomped on his head. He was rendered unconscious by the beating, and was then placed in the trunk of his taxi cab. Defendant and the others then left the scene.

When the victim was discovered in the trunk, he was dead.

Defendant and the other men were eventually apprehended. Defendant was tried with one co-defendant. He was charged with first degree murder and convicted of the lesser included offense of reckless manslaughter. This appeal followed.

I.

Defendant first contends that the trial court erred by denying defendant's challenges of four jurors for cause. We do not agree.

Section 16–10–103, C.R.S.2000, and Crim. P. 24 provide for challenges for cause to prospective jurors. A defendant in a criminal case has a fundamental right to trial by jurors who are fair and impartial. *People v. Abbott*, 690 P.2d 1263 (Colo.1984).

The standard of review of a trial court's ruling on a challenge for cause is whether the court abused its discretion. Deference is given to the trial court's assessment of the prospective juror because of its perspective in evaluating the demeanor and body language of the juror. *Carrillo v. People*, 974 P.2d 478 (Colo.1999). We will overturn a court's ruling on a challenge for cause only if the record presents no basis to support it. *People v. Harlan*, 8 P.3d 448 (Colo. 2000).

A.

Defendant challenged a juror whose mother was the sister of the grandmother of one of the persons charged in this incident, but who was not a co-defendant in this trial. On appeal, defendant asserts that his challenge should have been granted because this juror was biased.

Defendant argued that the juror's familial relationship would bias her against any attempt by defendant to shift blame to her distant relative. The trial court found that the juror had not displayed any predisposition or prejudice and therefore denied the challenge for cause.

The record supports the trial court's ruling. The juror stated the relationship would not affect her. When asked directly about evidence implicating her relative, the juror stated she would not view such evidence more critically. While assurances of good faith cannot compensate for factors which inherently produce prejudice, *People v. Rogers*, 690 P.2d 886 (Colo.App.1984), the record here shows that the relationship at issue was not one that inherently produced prejudice. The relationship was indirect and distant, and the record also reveals that the juror had not seen this relative for many years.

### B.

Defendant asserts that another juror's answer to voir dire questions demonstrated that he would not follow the law concerning the burden of proof and that the trial court therefore erred in denying a challenge for cause.

However, the record does not support defendant's assertion. When asked by the prosecutor if he could return a verdict of guilty if the charge was proven beyond a reasonable doubt, the juror responded, "I guess depends on which side proves the other, gives me the better proof (sic)." In this context, while not revealing a full understanding of the burden of proof, the answer shows the juror was willing to listen to defendant's evidence. Because there is nothing in the voir dire that demonstrates that this juror would refuse to follow the court's instructions, we defer to the trial court's assessment of this juror.

### C.

Defendant challenged another juror because that juror's sister was murdered twelve years earlier. The trial court denied the challenge, finding that this fact would not interfere with the juror's ability to consider this case.

The record supports the trial court's finding. This juror articulately and adamantly stated that his sister's death would not influence him. He said, "justice was served [in his sister's case] and I'm fine with that. So,

there is no reason I should punish these two individuals for something that happened twelve years ago."

### D.

Defendant also challenged a juror who was a school psychologist. Based on his work with students, the juror expressed concern for the victims of crime. The trial court denied this challenge, finding that the juror expressed a heightened concern for victims of crime, but did not have a predisposition in this case. The juror's answers demonstrated his own concern over his neutrality in this case, but he consistently stated he would do his best to fulfill his role as a juror. The juror never said that he could not or would not act impartially.

As to each of the challenged jurors, the trial court was in the best position to judge the credibility of their responses. We see no abuse of the trial court's discretion here because as to each juror the findings are supported by the record.

Accordingly, we perceive no error in the trial court's denial of defendant's challenges for cause.

### II.

Defendant next contends that the trial court committed reversible error by admitting evidence of defendant's statements made after his arrest. He asserts that his statements were the product of an unlawful arrest and must be suppressed. We are not persuaded.

Defendant was a passenger in a vehicle that was stopped for driving in the wrong direction on a one-way street. The officer noticed that defendant, who was apparently asleep, had a cut lip and bloodstains on his pants. The officer asked the driver the name of his passenger. The driver stated the first name but mumbled the last name, which the officer could not understand. The officer then requested that the driver awaken defendant, and the officer asked defendant his name. Defendant gave a name different from that given by the driver. Defendant was subsequently arrested for giving false

information to a police officer and for outstanding warrants.

 The Fourth Amendment provides that people shall "be secure in their persons ... against unreasonable searches and seizures." U.S. Const. amend. IV. Police-citizen contacts fall into three categories: consensual encounters, investigative stops, and full arrests. *People v. Archuleta*, 980 P.2d 509 (Colo.1999). A full arrest must be based on probable cause to believe that the person arrested has committed, is committing, or is about to commit a crime. *People v. Holmberg*, 992 P.2d 705 (Colo.App.1999). An investigative stop can be justified by reasonable suspicion of criminal activity. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

 A consensual encounter is not a seizure and does not implicate Fourth Amendment protections.

> During a consensual interview, a police officer seeks the voluntary cooperation of an individual by asking non-coercive questions. A citizen is free to leave at any time during such an encounter or to ignore the police officer's question.

*People v. Paynter*, 955 P.2d 68, 72 (Colo. 1998) (citation omitted). The test to determine if an encounter is consensual is whether a reasonable person under the circumstances would believe he or she was free to leave or to disregard the police officer's request for information. *People v. Thomas*, 839 P.2d 1174 (Colo.1992).

In *Florida v. Bostick*, 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991), the Supreme Court noted that in some situations the "free to leave" test is not capable of literal application. In *Bostick*, the defendant was a passenger on a bus when the police asked to inspect his ticket and identification. The defendant argued that a reasonable bus passenger would not feel free to leave under the circumstances, because there was nowhere else to go on the bus, and because he risked being stranded if he left the bus that was about to depart. The Supreme Court concluded that under these circumstances the defendant would not have felt free to leave the bus even if the police had not been

present. Therefore, the court explained that the constraint on his movement said nothing about whether the police conduct was coercive. "Accordingly, the 'free to leave' analysis on which [the defendant] relies is inapplicable. In such a situation the appropriate inquiry is whether a reasonable person would feel free to decline the officer's request or otherwise terminate the encounter." *Florida v. Bostick, supra*, 501 U.S. at 436, 111 S.Ct. at 2387, 115 L.Ed.2d at 400.

 The touchstone of the Fourth Amendment is reasonableness measured in objective terms. There are no bright-line rules. Therefore, rather than rely on a single factor, the totality of the surrounding circumstances must be considered in order to determine whether the officer sought voluntary cooperation or exercised force or authority to effect a stop. This reasonable person test presupposes an innocent person and relies on an objective determination based on the totality of the surrounding circumstances. *People v. Paynter, supra*.

Here, the police officer observed a traffic violation and used his overhead flashing lights to stop the car in which defendant was a passenger. The record does not show that the officer used forceful or demanding language; he did not display a weapon or use any other show of force or authority beyond stopping the car by using his overhead flashing lights. He merely asked defendant his name.

 "It is well established that an officer's asking for identification alone does not amount to a seizure under the Fourth Amendment." *People v. Paynter, supra*, 955 P.2d at 75; *see also Immigration & Naturalization Service v. Delgado*, 466 U.S. 210, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984); *People v. Morales*, 935 P.2d 936 (Colo.1997).

An officer's request for identification and other information has been found to be a consensual interview in circumstances at least as intimidating as a traffic stop. In *Immigration & Naturalization Service v. Delgado, supra*, police agent's questioning of employees in their workplace concerning their identity and citizenship was held not to be a seizure. *Florida v. Bostick, supra*, held

that a police request for identification and other information from a passenger on a bus was not a *per se* violation of the Fourth Amendment. In *People v. Morales, supra,* the supreme court held that it was a consensual encounter when officers, while accompanying a person through an airport for a approximately forty minutes, asked questions concerning his identity, including asking for identification documents. They also asked to see his ticket, if he had ever been arrested, and if he was carrying illegal drugs. Likewise in *People v. Paynter, supra,* shining a spotlight on a legally parked vehicle, asking the driver and passenger for identification, and holding their identification for approximately fifteen minutes, was held to be a consensual encounter. The police activity in the above cited cases is far more intimidating than being stopped by the use of flashing lights, but still that activity did not convert the police contact into an investigative stop or a full arrest.

■ Here, the police officer used his lights to stop the vehicle for a traffic violation, but that display of authority was clearly directed toward the driver. This is a common occurrence in everyday life and was no more or less intimidating to defendant than if the police officer had approached him on foot, a situation that has been repeatedly held to constitute a consensual encounter. If defendants in the situations described in *Bostick, Morales,* and *Paynter* could feel free to decline the officer's requests for identification, then defendant here, in less intimidating circumstances, also could.

> Unless the circumstances of the encounter are so intimidating as to demonstrate that a reasonable person would have believed he was not free to leave if he had not responded, one cannot say that the questioning resulted in a detention under the Fourth Amendment.

*Immigration & Naturalization Service v. Delgado, supra,* 466 U.S. at 216, 104 S.Ct. at 1764, 80 L.Ed.2d at 255.

Defendant here, while traveling in a vehicle on a public street, was in a situation similar to the bus passenger in *Florida v. Bostick, supra.* He may have had nowhere else to go during the stop, or he may have

chosen to remain with the vehicle in order to continue on the journey when the traffic stop was concluded. Therefore, the "free to decline the request" analysis used in *Bostick* is appropriate here. Applying that analysis rather than the "free to leave" analysis, we conclude that the circumstances shown by the record here were not so intimidating that a reasonable person, in the defendant's position, would have felt that he or she was not free to decline the officer's request. Therefore, we conclude that the officer's request for defendant's name was part of a consensual interview.

■ When defendant answered with a name different from that given by the driver, the officer had reasonable suspicion to believe that defendant was providing false identifying information, a misdemeanor offense under § 18–8–111(1)(d), C.R.S.2000. Based on that reasonable suspicion, the officer was authorized to conduct an investigatory stop and briefly detain defendant while he investigated his suspicion. *See Terry v. Ohio, supra; Stone v. People,* 174 Colo. 504, 485 P.2d 495 (1971).

■ During the investigation, defendant was required to stand near the patrol car and was not restrained until he began fidgeting, looking repeatedly into a park across the street, and edging away from the police car. Upon observing this, the officer handcuffed defendant. The officer was alone and it was approximately five a.m. It was not unreasonable to place defendant in handcuffs when he showed signs of intent to flee, and that action did not convert the investigative stop into an arrest. *See People v. Pigford,* 17 P.3d 172 (Colo.App. 2000).

■ The officer's investigation revealed that defendant had in fact given a false name and that he had two arrest warrants outstanding. The officer then had probable cause to arrest defendant. The statements defendant sought to suppress were not made until after the officer had acquired probable cause to arrest him. Accordingly, it was not error for the trial court to refuse to suppress the statements.

We are aware that another division of this court recently decided *People v. Jackson,* 13 P.3d 838 (Colo.App. 2000) (*cert. granted* November 20, 2000), reaching a different conclusion on similar facts. The only significant factual difference between *Paynter* and *Jackson* is that in *Jackson* the officer used his flashing lights to stop the vehicle prior to his contact with the occupant. The use of flashing lights to stop a vehicle is but one factor to consider in classifying a police-citizen contact for Fourth Amendment purposes. However, no single factor is controlling. *People v. Paynter, supra.*

We conclude that the additional factor of using flashing lights to effect a traffic stop is not an intimidating factor sufficient to distinguish this case from the supreme court's analysis in *Paynter.* Accordingly, we apply *Paynter* and decline to follow *Jackson.*

### III.

■ Defendant also contends that his constitutional right to confront witnesses was violated by the admission of hearsay statements by the co-defendant, who did not testify and therefore was not available for cross-examination. We are not persuaded.

The hearsay evidence at issue here was admitted when a witness testified at trial that the co-defendant told her he had hit and kicked the victim. The witness also stated that she "knew who else was involved" and wanted the police to know because she wanted the other individuals to share the consequences of their actions. The witness' testimony did not mention defendant's name or specifically incriminate him.

After admitting the hearsay statements of the co-defendant, the court issued a limiting instruction to the jury, directing them to consider that testimony only as evidence against the co-defendant. We must presume that the jury followed the limiting instruction. *People v. Delgado,* 890 P.2d 141 (Colo. App.1994).

As against the co-defendant, the statement was admissible under CRE 801(d)(2) as an admission by a party-opponent. Since the statement did not in any way implicate de-

fendant, we perceive no error in its admission.

Defendant argues that the witness' reference to knowledge of the involvement of others would lead the jury to believe this referred to him. However, the evidence implicated two others in addition to defendant and the co-defendant, and the witness' statement did not directly or indirectly refer to defendant. Therefore, it is mere speculation to suggest that the jury would assume it referred to defendant.

Under these circumstances we conclude it was not error to admit the hearsay statement with the limiting instruction.

### IV.

■ Defendant contends the trial court erred in refusing to sever his trial from that of the co-defendant. Defendant specifically argues that, because hearsay statements attributed to the co-defendant were admitted, which statements contained admissions that the co-defendant robbed and beat the victim, defendant was entitled to severance of his trial. Defendant argues that statements by the co-defendant implicitly implicated him in the beating of the victim. We do not agree.

■ A motion for severance of trials of co-defendants generally is addressed to the sound discretion of the trial court, and that decision will be affirmed absent a showing of abuse of discretion and actual prejudice to the moving party. *Peltz v. People,* 728 P.2d 1271 (Colo.1986). As relevant here, a severance is mandatory only upon a showing that there is evidence that is admissible against one co-defendant but not against the other, and that evidence is prejudicial to the defendant against whom the evidence is not admissible. Section 16–7–101, C.R.S.2000; Crim. P. 14; *People v. Lesney,* 855 P.2d 1364 (Colo. 1993).

Here, as noted above, the evidence against the co-defendant cannot be fairly read as implicating defendant. Moreover, defendant was not charged with robbery, and therefore evidence that the co-defendant robbed the victim did not unfairly prejudice him.

The case was not so complex as to confuse the jury. There was no reason to infer a

likelihood that the jury would ignore the trial court's admonitions and improperly use evidence admitted only against the co-defendant to convict defendant. *See Peltz v. People, supra.*

Accordingly, we find no abuse of discretion in the trial court's refusal to grant defendant's motion for severance.

### V.

Defendant finally contends that the trial court abused its discretion in sentencing him to the maximum term in the extraordinary range. Again, we find no abuse of discretion.

In imposing sentence, the trial court must consider the nature of the offense, the character of the individual, the deterrent effect upon the individual and society, and the protection of the public. Sentencing decisions are left to the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion. *People v. Vela,* 716 P.2d 150 (Colo.App.1985).

Here, the trial court made significant factual findings regarding defendant's involvement in a brutal assault resulting in death to support its sentencing decision. The trial court noted that the evidence indicated that defendant threw the initial punch and did not attempt to assist the victim at any time. Also, the trial court noted defendant's previous juvenile record.

The trial court's sentence to the maximum in the extraordinary aggravated range is more than adequately supported by the evidence and sentencing findings.

The judgment and sentence are affirmed.

RULAND and ROY, JJ., concur.