(154 P.3d 511)
No. 94,726

MERRITT ATWELL, *Appellant,* v. MIKHAIL IMSEIS, M.D., *Appellee.*

—

Opinion filed March 23, 2007.

*Jerry K. Levy, Ronald L. Schneider,* and *Katherine L. Kirk,* of Law Offices of Jerry K. Levy, P.A., of Lawrence, for appellant.

*Brian C. Wright,* of Law Office of Brian C. Wright, of Great Bend, for appellee.

Before MARQUARDT, P.J., PIERRON, J., and KNUDSON, S.J.

MARQUARDT, J.: Merritt Atwell appeals various decisions of the trial court relating to jury selection. We affirm.

In April 2001, Dr. Mikhail Imseis, a physician in Ness City, treated Atwell. As part of his treatment, Dr. Imseis prescribed the antibiotic Gentamycin. There were problems with the antibiotic

and Atwell was allegedly left with severe bilateral vestibular weakness. When Atwell was treated, he was in his 80s.

In April 2003, Atwell filed a petition alleging that Dr. Imseis was negligent for prescribing Gentamycin and for not closely monitoring him. The case was set for trial in Ness County, which has a population of approximately 3,400 people. Ness County has three physicians. Dr. Imseis is the only physician in Ness City.

From the beginning, Atwell was concerned that it would be difficult to get a jury panel with no individuals who were patients of Dr. Imseis. Atwell filed a motion requesting that all of Dr. Imseis' current patients be dismissed from the jury pool. The motion was denied.

Atwell also filed a motion to use a voir dire juror questionnaire which included questions about employment, history with the legal or medical professions, and attitudes towards the medical profession. Atwell and Dr. Imseis agreed on a questionnaire and it was submitted to the trial court. The trial court denied the use of the juror questionnaire.

No current patient and only one former patient of Dr. Imseis were seated on the jury. The jury found for Dr. Imseis. Atwell appeals.

Atwell believes the "odds were high" that a number of prospective jurors would have "intimate and privileged" ties to Dr. Imseis even though he acknowledges he did not file a motion to change venue. Atwell contends that his proposed questionnaire would have identified "specific bias." He argues that the trial court abused its discretion by not allowing the use of the questionnaire, which deprived him of a fair trial.

The purpose of voir dire is to enable the parties to select competent jurors who are without bias, prejudice, or partiality. The trial court has broad discretion in controlling voir dire. Our standard of review on matters of jury selection is abuse of discretion. *State v. Hayes*, 258 Kan. 629, 631, 908 P.2d 597 (1995).

K.S.A. 60-247(b) allows prospective jurors to be examined under oath. There is no prescribed method for conducting juror examinations. Kansas has no case which addresses the use or denial of the use of a jury questionnaire in a civil trial. In the absence of

specific rules, the general rules of trial court discretion and fairness apply.

The proposed questionnaire would have questioned jurors about the hardship that would be encountered from changing doctors, the degree of trust they placed in their medical provider, whether a person should be awarded money for injuries caused by a physician, and whether they would be willing to go to a doctor after awarding money to a party who was injured by that doctor. The questionnaire also asked jurors if they could be fair if the defendant was their family doctor.

The trial court acknowledged that Ness County is small and many prospective jurors might have preexisting personal or professional relationships with either party. A larger than normal number of potential jurors was called so that there would be as many choices as possible. Twice, Atwell's attorneys were allowed to conduct in-camera voir dire to avoid tainting the panel. The attorneys and the trial court asked many questions relating to attitudes about lawsuits and medical personnel. There were numerous questions asked about potential jurors' relationship with Dr. Imseis.

Most of the questions on the proposed questionnaire were asked during voir dire, and no time limit was placed on voir dire. The failure to use the questionnaire did not negatively impact the composition of the jury. We fail to see what the questionnaire would have accomplished, and how it would have benefitted Atwell. The trial court did not abuse its discretion when it did not allow the use of the proposed questionnaire.

On appeal, Atwell again argues that all of Dr. Imseis' current patients should have been automatically removed from the panel. Atwell claims there was a "high probability of bias," even if the bias was only subconscious. Atwell maintains that he was prejudiced by having to use his peremptory challenges and believes that several jurors with biases were allowed on the panel.

It does not appear that any of Atwell's three peremptory challenges was used to exclude a patient of Dr. Imseis. Panel member S.M.'s husband was a patient and she thought doctors were "sued too much." Panel member S.P. was an employee of Dr. Imseis at one time and now works for the hospital. Panel member S.B. has

a "professional" association with Dr. Imseis, but it is not clear from the record on appeal if she is a patient of Dr. Imseis. She also lives with a woman who works in the hospital lab and was a potential trial witness.

Kansas has not addressed the issue of whether a patient of a party should be removed from a jury panel for cause. In *Bowman v. Perkins*, 135 S.W.3d 399, 402 (Ky. 2004), the Kentucky Supreme Court ruled that "a current and ongoing physician-patient relationship is such a close relationship where a trial court should presume the possibility of bias." For that reason, the court held that "a prospective juror who is a current patient of a defendant physician in a medical malpractice action should be discharged for cause." 135 S.W.3d at 402.

In contrast, the Supreme Court of Appeals of West Virginia ruled that where a doctor-patient relationship exists between one of the parties to litigation and a prospective juror, "such prospective juror is not disqualified *per se*" but "special care should be taken by the trial judge to ascertain" that the prospective juror is free from bias or prejudice. *Wade v. Chengappa*, 207 W. Va. 319, 322, 532 S.E.2d 37 (1999).

We are unwilling to create an absolute rule like the one formulated in Kentucky. We believe it is more prudent to recognize the possibility of bias and take steps to remove jurors who may have an insurmountable bias. The trial court in this case gave defense counsel wide latitude in questioning and conducting in-camera examinations. There was a larger than average pool of potential jurors summoned to the courthouse. No current patient of Dr. Imseis was on the jury, and Atwell did not use any of his peremptory challenges to remove Dr. Imseis' patients from the panel. Therefore, we do not believe this is a case that requires a new rule for voir dire. Atwell was not unduly prejudiced by the trial court's ruling.

Atwell believes the trial court asked potential jurors unduly leading questions and should have avoided asking questions that were rehabilitative in nature and designed to get a proclamation of fairness.

The extent of the examination of prospective jurors during voir dire is within the sound discretion of the trial court. Appellate courts will not interfere with this process unless a clear abuse of discretion is established. *Butler v. HCA Health Svcs. of Kansas, Inc.*, 27 Kan. App. 2d 403, 429, 6 P.3d 871, *rev. denied* 268 Kan. 885 (1999).

The trial court asked, after a panel member said that his opinion would be swayed by the fact that Dr. Imseis was his physician, "You understand in local communities we all know a lot of people and we all deal with a lot of people professionally and that's the nature of rural communities, right?" The juror said that he understood, but still expressed his inability to remain impartial. He was excused for cause.

The trial court asked similar questions of witnesses who were close to Atwell. One juror said that her personal relationship with Atwell "[v]ery well might" cause her to favor him. The trial court followed up by asking:

"THE COURT: Maybe a better way for me to ask that is the law says that this case must be decided upon the evidence that is presented in this courtroom. And do you feel if you heard that evidence that you could make a fair and impartial decision or do you feel that you're—that you are partial in this case?"

The juror said that she thought she could "probably make a fair decision." She was not seated on the jury.

The trial court is allowed to ask questions of potential jurors during voir dire, and these questions may be used to further clarify a panel member's initial reluctance to remain impartial. The trial court may question jurors who initially expressed bias towards either party so long as the questioning is not coercive or improper. Here, the trial court showed no bias and was not coercive or improper it its questioning of prospective jurors. Therefore, we reject Atwell's claim that he was denied a fair trial based on the trial court's conduct during voir dire.

Affirmed.