**Loretta Jean DAY and Richard C. Day, Plaintiffs–Appellants,**

v.

**Bruce JOHNSON, M.D., Defendant–Appellee.**

No. 08CA1443.

Colorado Court of Appeals, Division III.

Sept. 3, 2009.

Law Office of Michael Goodman, PC, Michael Goodman, Englewood, Colorado, for Plaintiffs–Appellants.

Kennedy Childs & Fogg, P.C., Barbara H. Glogiewicz, Christopher K. Miller, Denver, Colorado; Jaudon & Avery LLP, David H. Yun, Jared R. Ellis, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge ROMÁN.

In this medical malpractice action, plaintiffs, Loretta Jean Day and Richard C. Day, appeal the judgment entered against them on a jury verdict in favor of defendant, Bruce Johnson, M.D. On appeal, plaintiffs contend that the trial court abused its discretion by (1) refusing to dismiss two jurors for cause; and (2) instructing the jury that an unsuccessful medical procedure is not necessarily the result of a physician's negligence. We conclude that the trial court did not abuse its discretion in either manner, and affirm the judgment against plaintiffs.

## I. Factual Background

Defendant treated Ms. Day for a nodule growing on her thyroid. He recommended surgical removal of the nodule as well as part of Ms. Day's thyroid to alleviate the problem, and later carried out the procedure. Shortly thereafter, Ms. Day suffered complications from the surgery that caused injury to her larynx, affecting her ability to speak. Plaintiffs alleged that defendant's surgery recommendation was not the appropriate course of treatment for Ms. Day's condition, and further claimed that defendant negligently performed the surgery. However, the jury concluded that defendant was not negligent, and judgment was then entered for defendant. Plaintiffs now appeal that judgment.

## II. Challenges for Cause

Plaintiffs first contend that the trial court abused its discretion by denying their challenges for cause against two jurors. They argue that the jurors respectively exhibited an interest in the outcome of the case and a bias in favor of defendant that required their dismissal for cause. They contend that the trial court's failure to dismiss these jurors warrants a new trial of this matter. However, because both of the trial court's rulings on plaintiffs' challenges for cause were supported by the record, we may not disturb either ruling. *See People v. O'Neal*, 32 P.3d 533, 535 (Colo.App.2000) ("We will overturn a court's ruling on a challenge for cause only if the record presents no basis to support it.").

### A. Standard of Review

Challenges for cause "involve essentially a factual determination and are entrusted to the sound discretion of the trial court." *Blades v. DaFoe*, 704 P.2d 317, 323 (Colo.1985). "Deference is given to the trial court's assessment of the prospective juror because of its perspective in evaluating the demeanor and body language of the juror." *O'Neal*, 32 P.3d at 535. Consequently, a trial court's decision to deny a challenge for cause "will not be disturbed on review, absent a manifest abuse of that discretion." *Freedman v. Kaiser Found. Health Plan*, 849 P.2d 811, 814 (Colo.App.1992).

Challenges for cause are governed by C.R.C.P. 47(e). If a potential juror falls within any of the categories identified in C.R.C.P. 47(e)(1) through (5), "the bias of the juror is implied and the trial court must dismiss the juror." *Dupont v. Preston*, 9 P.3d 1193, 1195 (Colo.App.2000), *aff'd*, 35 P.3d 433 (Colo.2001); *see Safeway Stores, Inc. v. Langdon*, 187 Colo. 425, 428, 532 P.2d 337, 339 (1975) (trial court committed reversible error by denying challenge for cause of potential juror who was employed by defendant and was within the class of persons excluded from jury service by C.R.C.P. 47(e)(3)).

A trial court also commits reversible error if it dismisses a juror for a cause other than those enumerated in C.R.C.P. 47. *See Faucett v. Hamill*, 815 P.2d 989, 990 (Colo. App.1991) ("Jury selection in a civil action is governed by C.R.C.P. 47, which sets forth specific grounds upon which a prospective juror may be challenged for cause.... Sustaining a challenge of a prospective juror for cause on grounds other than those provided by C.R.C.P. 47 has the effect of giving the challenging party an additional peremptory challenge which affects or could affect the substantial rights of the other party.").

### B. Challenge to Juror M

Plaintiffs contend that Juror M should have been dismissed for cause under C.R.C.P. 47(e)(5), which mandates the dismissal of a potential juror who has an interest "in the event of the action, or in the main question involved in the action." C.R.C.P. 47(e)(5). Plaintiffs maintain that Juror M, an operating room nurse in Pueblo, had an interest in the litigation because she expressed "a little bit of a concern" that the size of the medical community in which she and defendant both practice may lead her to work "with [defendant] at some point in time, which may or may not have repercussions on [her]." They argue that because Juror M never specifically stated that she could set aside this concern before rendering a verdict, Juror M should have been dismissed for cause under C.R.C.P. 47(e)(5).

However, Juror M's interest in the event of the action was uncertain and speculative. Although she expressed concern about the potential for a relationship with defendant, Juror M acknowledged that she neither knew him nor had any plans to work with him in the future. In our view, the possibility of future contact with a litigant is insufficient to create a current "interest in the event of the action" on the part of the potential juror.

We know of no cases in which the mere possibility that a potential juror could have interactions with a litigant in the future disqualified the juror under C.R.C.P. 47(e)(5), and plaintiffs have not cited to any. Rather, plaintiffs rely upon a case in which the potential juror (a) had some business dealings with the defendant company which earned the juror special savings from the defendant company, (b) expected the business relationship with the defendant company to continue, and (c) conceded the relationship could affect his impartiality in rendering a verdict. *Denver, S.P. & P.R. Co. v. Driscoll*, 12 Colo. 520, 521, 21 P. 708, 708 (1889). The supreme court affirmed the trial court's dismissal of the juror for cause. Unlike Juror M, the potential juror in *Driscoll* had an ongoing relationship with a party to the lawsuit, and thus had a current interest in "the event of the action." In contrast, Juror M had neither worked with nor met defendant; she was concerned only with the possibility that they could encounter one another in the future. Consequently, Juror's M's situation is factually distinguishable from that of the juror described in *Driscoll*.

Other Colorado decisions have held that certain existing relationships between a potential juror and a party or witness were too remote to justify exclusion of the juror. *See Kaltenbach v. Julesburg School Dist. RE–1,* 43 Colo.App. 150, 154, 603 P.2d 955, 958 (1979) ("[A] juror's standing in a debtor-creditor relation with a party, without more, is insufficient grounds for a challenge for cause."); *Oglesby v. Conger,* 31 Colo.App. 504, 507, 507 P.2d 883, 885 (1972) (mere fact that potential jurors were policyholders of defendant's insurance company "in and of itself would not necessarily affect their judgment in the case"); *cf. State Dep't of Highways v. Copper Mountain, Inc.,* 624 P.2d 936, 937 (Colo.App.1981) (in condemnation action, trial court did not abuse its discretion in refusing to disqualify as chairman of commission an attorney who had received referrals from the attorney representing defendant).

Our review of decisions reached in other jurisdictions also uncovered no instances in which the possibility of future contact or relationship was sufficient to warrant excluding a potential juror from the jury pool. On the contrary, as in Colorado, an attenuated, existing relationship did not give rise to sufficient "interest" in the proceedings on the part of the juror to support a challenge for cause. *See Atwell v. Imseis,* 37 Kan.App.2d 435, 154 P.3d 511, 514 (2007) (refusing to adopt "absolute rule" barring patients of defendant-physicians from serving as jurors in medical malpractice actions); *Harris v. Hanson,* 349 Mont. 29, 201 P.3d 151, 157 (2009) (trial court did not abuse its discretion by denying challenge for cause to potential juror in medical malpractice action whose employer, a medical clinic, had been represented by defense counsel's law firm); *Larson v. Williams Elec. Coop.,* 534 N.W.2d 1, 3 (N.D. 1995) (membership in defendant electric cooperative was not significant enough interest in litigation to warrant exclusion for cause of potential jurors).

These cases make clear that even when a current, attenuated relationship exists between a potential juror and a party or witness, the potential juror may not have sufficient interest in the action to warrant exclusion for cause. If the existence of such a relationship does not necessitate the potential juror's exclusion, the mere possibility of a future relationship between Juror M and defendant should not result in Juror M's dismissal under C.R.C.P. 47(e)(5).

Moreover, Juror M expressly stated that she believed she could "set aside [her] own personal understandings of thyroids and how they're managed and listen to experts and follow the judge's instruction at the end of the case." The "trial court was entitled to accept" Juror M's assurances that she could and would follow its instructions. *Freedman,* 849 P.2d at 814.

Further, the trial court had the ability and the authority to weigh Juror M's demeanor and equivocation over the depth of her concern about the possibility of a future employment relationship with defendant. *See People v. Sandoval,* 733 P.2d 319, 321 (Colo.1987) (recognizing that trial court's are afforded broad discretion in determining challenges for cause because trial judge has benefit of personally observing potential jurors). Juror M's statement that she did not know whether jury service would have future implications for her and emphasis that any such implications were only "a little bit of a concern," suggest her interest in the cause was not substantial. *See People v. Drake,* 748 P.2d 1237, 1243–44 (Colo.1988) ("A prospective juror's expression of concern or indication of the presence of some preconceived belief as to some facet of the case does not automatically mandate exclusion of such person for cause.").

We thus conclude that the trial court did not abuse its discretion by denying plaintiffs' challenge for cause of Juror M.

## C. Challenge to Juror G

Plaintiffs next contend that Juror G should have been dismissed for cause under C.R.C.P. 47(e)(7) because she expressed bias in favor of defendant. We conclude, however, that the trial court did not abuse its discretion by denying plaintiffs' challenge for cause to Juror G.

▮▮ A party may challenge a potential juror for cause if there is the "existence of a state of mind in the juror evincing enmity against or bias to either party." C.R.C.P. 47(e)(7). Unlike a challenge for cause made pursuant to C.R.C.P. 47(e)(1) through (5), there is no presumption that a juror challenged under C.R.C.P. 47(e)(7) will be biased for or against a party. A challenge for cause under C.R.C.P. 47(e)(7) "requires a showing that the juror is biased in fact." *Dupont*, 9 P.3d at 1195. Whether a potential juror is biased in fact for or against a party "is a factual determination ... entrusted to the sound discretion of the trial court," and "will not be disturbed on review, absent a manifest abuse of that discretion." *Freedman*, 849 P.2d at 814.

### 1. Juror G's Expressions of Bias

▮▮ During voir dire, Juror G affirmed that she had "some strong leanings already" and feared she "might feel emotional about this," and could feel herself "having a lot of sympathy for this doctor." She later expressed a potential reluctance to award damages for pain and suffering.

However, Juror G also reiterated during questioning that she believed she could "listen fairly" and "be fair." She further stated that if she were "convinced" defendant had "committed malpractice and caused an injury to Ms. Day," she could "render a verdict against him."

▮▮ A juror who expresses an ability to set aside any biases need not be disqualified from jury service. *See People v. Lefebre*, 5 P.3d 295, 301 (Colo.2000) ("A prospective juror who makes a statement suggesting actual bias may nonetheless sit on the jury if she agrees to set aside any preconceived notions and make a decision based on the evidence and the court's instructions."). Juror G's statements of impartiality support the trial court's determination that Juror G should not have been dismissed under C.R.C.P. 47(e)(7), and we perceive no abuse of discretion in this decision. Because the record contains a basis supporting the trial court's decision, we may not reverse it. *See O'Neal*, 32 P.3d at 535.

### 2. Juror G's Friendships with Defense Counsel's Family and Defense Witnesses

▮▮ Plaintiffs also contend that Juror G was biased in defendant's favor because of her friendship with several defense witnesses and her acquaintance with defense counsel's father. This argument was not raised before the trial court, however, and therefore is not preserved for our review. *See Blades*, 704 P.2d at 322–23 ("[T]o adequately preserve the issue on appeal, the ground(s) upon which the objection is made must be reasonably apparent to the trial court."). We therefore decline to address this contention.

### III. Jury Instruction No. 27

Finally, plaintiffs contend that the trial court abused its discretion by giving instruction number 27. At the close of the parties' presentation of evidence, the jury was instructed as follows:

> A physician does not guarantee or promise a successful outcome by simply treating or agreeing to treat a patient.
>
> An unsuccessful outcome does not, by itself, mean that a physician was negligent. An exercise of judgment that results in an unsuccessful outcome does not, by itself, mean that a physician was negligent.

As they argued before the trial court, plaintiffs contend that the above pattern jury instruction, CJI–Civ. 15:4 (2008), which was given as jury instruction number 27, is "antiquated and misleading." They contend similar instructions have been rejected by a growing number of other jurisdictions on the basis that the language may immunize medical professionals from liability for any action that may be considered within their judgment. We conclude that the pattern instruction accurately reflects Colorado law and decline plaintiffs' invitation to discard it.

### A. Standard of Review

▮▮ A "trial court has substantial discretion in formulating jury instructions so long as they include correct statements of the law and fairly and adequately cover the issues presented." *Taylor v. Regents of Univ. of Colo.*, 179 P.3d 246, 248 (Colo.App.2007). When giving jury instructions, "the trial court shall generally use those instructions

contained in the Colorado Jury Instructions (CJICiv.) that apply to the evidence under the prevailing law." *Fishman v. Kotts*, 179 P.3d 232, 235 (Colo.App.2007); *see* C.R.C.P. 51.1(1).

■ Absent an abuse of discretion, a trial court's "decision regarding the form" of an instruction will not be reversed on appeal. *Taylor*, 179 P.3d at 248.

### B. Analysis

■ The challenged instruction relies on CJI–Civ. 15:4, which, in turn, is accurately based on *Brown v. Hughes*, 94 Colo. 295, 30 P.2d 259 (1934). There, the supreme court reversed a verdict for the plaintiff in a medical malpractice case. The supreme court concluded that the jury had been inappropriately misled to believe that the poor outcome evidenced that an "improper course was followed." *Id.* at 305, 30 P.2d at 263. Rather, the court concluded, the defendant physicians should not have been liable if they had abided by the applicable standard of care in treating the patient.

> In the absence of a special contract otherwise providing, a physician and surgeon employed to treat an injury impliedly contracts that he possesses that reasonable degree of learning and skill ordinarily possessed by others of his profession, and that he will use reasonable and ordinary care and diligence in the exercise of his skill and the application of his knowledge to accomplish the purpose for which he is employed, and that he will use his best judgment in the exercise of his skill in deciding upon the nature of the injury and the best mode of treatment. * * * He does not undertake to warrant a cure and is not responsible for want of success, unless that want results from failure to exercise ordinary care, or from his want of ordinary skill.

*Id.* at 304, 30 P.2d at 262 (quoting *McGraw v. Kerr*, 23 Colo.App. 163, 167–68, 128 P. 870, 872–73 (1912)). *Brown* has not been overruled and thus remains the rule of law in Colorado. Pattern instruction 15:4, which is based on *Brown*, consequently reflects the current state of Colorado law.

Plaintiffs argue that pattern instruction 15:4 should nonetheless be rejected because it no longer reflects modern views of malpractice law. In support of their contention, plaintiffs rely upon the decisions of numerous other jurisdictions which, they claim, have rejected similar language in jury instructions, finding the error-in-judgment language in their respective instructions confusing and misleading.

However, upon reviewing the instructions examined by other jurisdictions, we conclude that CJI–Civ. 15:4 should not be categorized as an "error-in-judgment" instruction as plaintiffs contend. Unlike the instructions in the cases relied upon by plaintiffs, CJI–Civ. 15:4 does not expressly immunize a physician from liability for certain errors in judgment, or instruct jurors that a physician who acted with reasonable care and skill in exercising judgment is not liable for any resulting injuries. *See Parodi v. Washoe Med. Ctr. Inc.*, 111 Nev. 365, 892 P.2d 588, 591 (1995) (concluding "that any instruction specifying nonliability for certain errors in judgment, or the applicability of 'honest' or 'best' judgment, may fall under the rubric of 'error-in-judgment'"); *Rogers v. Meridian Park Hosp.*, 307 Or. 612, 772 P.2d 929, 930 (1989) (rejecting as improper instruction which stated, "A physician is liable for an error of judgment if the physician fails to act with reasonable care and skill in exercising that judgment.... A physician is not liable for an error in judgment if the physician acts with reasonable care and skill in exercising such judgment."). The instruction given by the trial court here is distinguishable from instructions reviewed and rejected by some other jurisdictions because it did not contain language mandating a finding of no liability if the physician's judgment was made in good faith.

■ Rather, CJI–Civ. 15:4 states that neither an unsuccessful outcome nor an exercise of judgment that results in an unsuccessful outcome, means, "by itself," that a physician was negligent. The instruction follows a fundamental tenet of tort law that the mere fact that a plaintiff has suffered an injury, without more, does not mean the defendant was negligent. *Conrad v. Imatani*, 724 P.2d 89, 91 (Colo.App.1986) ("The mere fact of a bad or lamentable result is not prima facie evidence of negligence on the part of the treating physician."); *Holmes v. Gamble*, 624

P.2d 905, 906 (Colo.App.1980), *aff'd,* 655 P.2d 405 (Colo.1982); *see also Smith v. Koslow,* 757 N.W.2d 677, 680 (Iowa 2008) ("It is a fundamental tenet of tort law that the fact a plaintiff has suffered an injury, without more, does not mean the defendant was negligent."). Regardless of the occurrence of an injury, to recover in a tort action a plaintiff must prove negligence by establishing both a duty and a breach of that duty. *See City of Aurora v. Weeks,* 152 Colo. 509, 515, 384 P.2d 90, 93 (1963).

An instruction similar to that at issue in this case was recently reviewed by the Supreme Court of Iowa, which concluded that the instruction followed the fundamental tenet of tort law described above. In *Smith v. Koslow,* a medical malpractice action, the Iowa Supreme Court affirmed the trial court's decision to instruct the jury that the existence of an injury does not necessarily mean a doctor acted negligently. *Smith,* 757 N.W.2d at 679. The court rejected the plaintiff's contention that the instruction improperly emphasized the physician's argument that death in surgery could have been caused by factors other than his negligence, holding instead that the instruction reflected "'well nigh universally recognized principles of medical malpractice law.'" *Id.* at 680 (quoting *Jones v. Porretta,* 428 Mich. 132, 405 N.W.2d 863, 869 (1987))

We find the reasoning of *Smith* persuasive, and conclude that instruction number 27 was an adequate and accurate statement of applicable Colorado law. In contrast to "error-in-judgment" instructions rejected by some jurisdictions, CJI–Civ. 15:4 does not instruct jurors that the defendant could not be held liable for exercising good faith judgment. The instruction instead follows the basic tenet of tort law that injury alone is insufficient to warrant liability. We consequently find no error in the trial court's use of CJI–Civ. 15:4 to instruct the jury.

The judgment is affirmed.

Judge DAILEY and Judge TERRY concur.